## TELLURIDE POWER CO. OF TEXAS v. CITY OF TEAGUE. (No. 8645.)

(Court of Civil Appeals of Texas. Dallas. March 25, 1922. Rehearing Granted April 29, 1922.)

1. **Electricity** ⬤⟶11—**Power company held required to supply specified horse power current to city's current consuming devices at any time required.**

Where power company's contract with city provided that the minimum horse power to be furnished city should not be less than 70 horse power, and required the city to pay therefor "$2 for each contract horse power of connected load which payment entitles it (city) to consume 25 kilowatt hours of current for each contract horse power" per month, and the decree in city's action to enforce performance of contract required the company to furnish the city "a 70 horse power connected load for the operation of its waterworks system and to comply with the contract that has been filed in this cause," the company was required to supply a minimum of 70 horse power current to the city's current consuming devices at any time it might be required.

2. **Judgment** ⬤⟶89—**Parties by consenting to judgment waive all except fundamental errors.**

Parties to action by consenting to the entry of a judgment waived all errors except fundamental errors going to the jurisdiction of the court, and became bound by the judgment, regardless of pleadings and evidence.

3. **Mandamus** ⬤⟶7, 187(9)—**Granting of writ largely discretionary with court, reviewable only for abuse of discretion.**

A clear and definite right to mandamus must be disclosed before the writ will issue, the granting of the writ being largely discretionary, to be exercised upon principles of equity, and, unless it appears that such discretion has been abused, the judgment ordering the writ to issue will not be disturbed on appeal merely because the right to be secured by it is substantially disputed by the adverse party.

4. **Mandamus** ⬤⟶133 — **Writ requiring power company to maintain current with minimum horse power available to city at all times held proper.**

Where a power company under its contract with city, and under a decree rendered in city's action against company to enforce the contract, required the company to supply a specified minimum of horse power current whenever such current might be required, the court did not err in granting a writ of mandamus requiring the company to keep such horse power available at all times.

5. **Mandamus** ⬤⟶1—**Use and extent of writ not controlled by agreement of parties.**

The use and extent to which a writ of mandamus shall issue cannot be controlled by mere agreement of the parties.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Judgment ⬦⬪91 — Consent judgment has same force and effect as judgment rendered in contested case.**

A judgment entered by mutual consent has the same force, dignity, and effect as judgment expressing the result of a contested case.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Action by the City of Teague against the Telluride Power Company of Texas. From the judgment rendered, the defendant appeals. Affirmed as modified.

Locke & Locke, of Dallas, and J. E Woods, of Teague, for appellant.

Williford & Geppert, of Teague, for appellee.

HAMILTON, J. On March 17, 1919, a contract was made between the parties to this appeal which, omitting immaterial portions, contains the following provisions:

"(1) That the company agrees to sell, furnish, and deliver to the city, and the city agrees to purchase from the company, all power and energy necessary up to but not exceeding 75 kilowatts, required by the city in the operation of its waterworks, pumps and pumping apparatus, consisting at present of triplex pumps (Gould) and two air compressors in its pumping plant or station, located near Teague, or in waterworks pumping plants or stations hereinafter constructed by the city, and in the illumination of said plants or stations and the grounds used in connection therewith, hereafter located as mentioned herein. Until increased by notice, as hereinafter provided, the minimum amount of power to be furnished by the company and to be paid for by the city hereunder shall not be less than seventy horse power, and said electric power and energy shall be used solely for the aforesaid power and illuminating purposes."

"(3) The power and energy to be delivered and received hereunder shall be of the kind commonly known as sixty-cycle three-phase alternating current, delivered at an electromotive force of approximately twenty-two thousand volts (reasonable variations in either direction to be allowed in both the frequency and electromotive force), and said power and energy shall be delivered to and received by the city at the company's pole located nearest to and within two hundred feet of each of the city's waterworks pumping plants, at the location described in section 1 thereof. The points at which power and energy are so delivered and received are hereinafter referred to as 'the points of delivery.'"

"(4) The city agrees that it will begin using power as soon as such power is available at the point of delivery, and on or before the 20th day from the date of billing (called herein the payment day) for each month following the date upon which the city shall have begun to take electric power and energy hereunder, until the expiration or other termination of this agreement, pay in legal tender to the company for the current consumed during such month a sum equivalent to:

"No. 1. Two dollars for each contract horse power of connected load, which payment entitles it to consume 25 kilowatt hours of current for each contract horse power.

"No. 2. For the first three thousand additional kilowatt hours of current consumed, at the rate of four cents per kilowatt hour.

"No. 3. For the next six thousand kilowatt hours of current consumed, at the rate of two and one-half cents per kilowatt hour; and,

"No. 4. For all additional kilowatt hours of current consumed, at the rate of one and three-fourths cents per kilowatt hours.

"(5) The amount of energy supplied to the city hereunder shall be determined by means of integrating watt-hour meters installed by the company at its expense in suitable places provided by the city within its pumping plants or stations, and the reading of these meters shall be deemed conclusive as to the quantity of electricity delivered hereunder, unless upon being tested said meters shall be found to register inaccurately and the error shall exceed two per cent. * * *

"(6) All pumping shall be done at time and hours selected by the company, provided such hours do not interfere with maintaining a proper water supply. The city shall be entitled to call upon the company for power at any time in case of fire or other similar emergency.

"(7) The company shall exercise reasonable diligence and care to avoid interruption of delivery of power and energy hereunder (but it shall not be liable to the city for any damage, loss or claim of whatever nature or character due to or arising out of any failure or interruption of the delivery of such power and energy, occasioned by any break or accident to any of the company's transmission lines or machinery, or caused by any inevitable accident, act of God, fire, strike, riot, war or any other act or thing beyond control). If by reason of any of the causes above mentioned, the company shall fail, or be unable to deliver any power or energy hereunder for a period of thirty consecutive days, the city may, at its option, terminate this agreement and all obligations of the city hereunder by giving five days' notice to the company, but no failure on the part of the company to deliver power and energy occasioned by any such causes shall be deemed a breach by it of this agreement. The company shall use due diligence in making all necessary repairs to its transmission lines and machinery in case of any accident that interrupts its service to the city. If for any of the above causes the company is unable to deliver power the city shall be entitled to employ its own reserve power plant for the purpose of supplying the city with water during the time of interruption to the company's service."

"(13) The company shall at all times give reasonable service to the city, and, in case of disagreement between the parties hereto as to whether such reasonable service is being given, the following method shall be used: The city shall appoint one umpire, the company one, and the two thus elected shall appoint a third. These umpires shall then summon not less than ten representative taxpayers of the city of Teague and receive their testimony as

⬦⬪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to the service given. If such board of umpires, after hearing the testimony as above, and any other testimony they themselves desire, shall decide that the company is not giving the city reasonable service, and if the company refuse to correct its service when so notified in writing by the board of umpires, then the city may terminate this contract within thirty days.

"(14) This agreement, unless otherwise terminated, shall continue in force for the term of five years from the date hereof, and shall inure to the benefit of and bind the respective successors and assigns of the parties hereto."

Appellee instituted suit against appellant which resulted in a judgment by consent entered on December 8, 1919, as follows:

"In District Court, Freestone County, Texas. No. 6244.

"City of Teague v. Telluride Power Company of Texas.

"The city of Teague, plaintiff in the above styled and numbered cause, appearing by its attorneys, Boyd, Bell & Smith and Williford & Geppert, and the defendant, Telluride Power Company of Texas, by its attorneys, Doyle & Woods, on December 8, 1919, have agreed that the following shall constitute the judgment in the cause:

"It is hereby adjudged and decreed by the court that the plaintiff take nothing by its suit for damages in the several matters set forth in its petition. It is hereby adjudged and decreed by the court that a permanent writ of mandamus issue requiring the defendant, its manager, officers, and assigns, to furnish the city of Teague a 70 horse power connected load for the operation of its waterworks system and comply with the contract that has been filed in this cause; that the order and requirement shall not extend beyond the termination period of said contract, to wit, March 17, 1924.

"It is further ordered, adjudged and decreed that the defendant, Telluride Power Company of Texas, shall install at the expense of the city five street lights, and furnish current for such lights free of charge to said city, during the present street lighting contract, terminating the 1st day of September, A. D. 1920, and after such date the plaintiff, city of Teague, and the Telluride Power Company of Texas, the defendant, may enter into any other street lighting contract they may agree upon, subject to its franchise.

"It is further ordered, adjudged, and decreed that the defendant, Telluride Power Company of Texas, shall proceed at the earliest possible time to install an additional unit at its plant in Teague, Tex., or rehabilitate the steam plant it now has within 90 days from this date; providing, however, that, if this cannot be done in that time by cause not attributable to its negligence, but to causes beyond its control, then defendant shall have a reasonable time thereafter.

"It is further ordered, adjudged, and decreed by the court that plaintiff do have and recover of and from the defendant all costs in this behalf expended, for which let execution issue."

On October 24, 1920, the instant suit was begun. This suit involved the complaint on the city's part that the power company had refused to comply with the provisions of its contract and the terms of the above-copied agreed judgment, particularly with reference to the requirement that it supply a 70 horse power connected load for the operation of the waterworks system of the city of Teague. The case was tried before the court without a jury and a judgment was entered finding:

"That under and by virtue of the decree of this court heretofore entered in cause No. 6244 on the 8th day of December, 1919, which judgment is of record in volume 11, pp. 662, 663, of the civil minutes of this court, the defendant, the Telluride Power Company of Texas, is obligated and bound to furnish, from and after that date, to the plaintiff, the city of Teague, Tex., for its use at and in connection with its waterworks plant, a 70 horse power connected load, available for use by said plaintiff at all times during the existence of the contract between plaintiff and defendant, and in addition thereto to install and maintain at its (defendant's) plant an additional steam unit or steam engine, ready and available at all times for use when necessary to carry out its obligation to furnish plaintiff the aforesaid 70 horse power connected load," and that "the defendant has failed from and after the date of the judgment in cause No. 6244 to comply with the provisions and orders in said judgment or decree contained."

### And adjudging that:

"The said J. G. Miller is now here adjudged and held to be in contempt of this court, and is now here fined in the sum of $100, which sum he is ordered to pay over to the clerk of this court, and that the state of Texas do have and recover of and from the said J. G. Miller the sum of $100, for which execution may issue; conditioned, however, that execution for said amount shall be and is hereby ordered postponed until the further orders of this court made and entered of record."

### Also that:

"The judgment and decree heretofore entered in cause No. 6244 be, and the same is, now here in all things continued and held in full force and effect, and that the defendant, Telluride Power Company of Texas, is hereby ordered to furnish, from and after this date, to the plaintiff, the city of Teague, Tex., for its use in connection with its waterworks plant, a 70 horse power connected load, ready and available at all times during the period of the contract existing between the plaintiff and defendant, and in addition thereto to install and maintain at its plant in the city of Teague an additional steam unit or engine for the furnishing of power (meaning an additional unit to that in operation at the date of the decree in cause No. 6244) ready and available at all times for use, should same become necessary to enable the plaintiff to furnish the power herein provided to the city of Teague for use of its water plant."

And directing that:

"For the purpose of carrying into effect the terms of this judgment the clerk of this court is ordered to issue, and the sheriff of Freestone county is ordered to serve, a writ of mandamus addressed to the manager, G. A. Biersach, or the president, J. G. Miller, commanding them, their successors, agents, and employees, to carry out and observe the terms and conditions of this judgment."

Further adjudging:

"That plaintiff take nothing as against the defendant by reason of its claim for damages accruing up to this date, and that defendant go hence without day, and that defendant G. A. Biersach go hence without day, and that plaintiff take nothing as against him."

The court made certain special findings of fact and conclusions of law. A portion of the findings of fact we copy as follows:

"The court finds as a fact that the defendant company failed and refused to comply with the terms of the judgment entered in cause No. 6244, and did not furnish, as therein directed and enjoined, the plaintiff, city of Teague, a 70 horse power connected load for the operation of its waterworks, as was contemplated and understood by the parties to said judgment at the time of its entry, to wit, a 70 horse power connected load, available at all times.

"The court finds that defendant did furnish a 70 horse power current, but did not furnish a 70 horse power connected load, available at all times, as contemplated by the decree in cause No. 6244."

Appellant takes the position in its brief that it is of importance to know the meaning of the expression, "70 horse power connected load," and other technical expressions used in electrical science, and insists that judicial notice of the meaning of such expressions may be taken by the court, and that the court in judicially noticing the fixed meanings of such expressions must necessarily determine the judgment entered by the court to be erroneous. In the alternative, appellant insists that, if the court may not judicially know the meaning of "connected load" and other technical terms applied to electrical science, then, in any event, the judgment must be reversed because it was entered without the guidance of any expert proof from which the meaning of such expressions could be ascertained by the trial judge, and that the burden rested upon appellee to supply such evidence.

We do not think that either the trial court or this court is required to know judicially, or through the medium of expert proof, the elements of electrical science concerning which appellant contends it is necessary to have definite knowledge as a basis for arriving at a judgment. Whatever a "connected load" technically may mean, and regardless of how the rate of flow of the electrical current is ascertained and the pressure producing the rate of flow is arrived at, the evidence reveals that power was not available in the minimum horse power fixed by the contract for the operation of the city's water pumps at very frequent intervals and during periods of long duration, which circumstances prevented the waterworks from functioning with required efficiency. This condition was alleged to result from a violation of the terms of the contract and of the decree of the court entered by consent. There was evidence offered by both parties without objection as to what was meant by a "connected load."

The court found that appellant did furnish a 70 horse power current, but did not furnish a 70 horse power connected load available at all times "as contemplated by the decree in cause No. 6244."

It seems that appellant's definition of "connected load" presented in its brief is sound. It is that the combined continuous rating of all the receiving apparatus on the consumer's premises, connected to the system or part of the system under consideration, is the "connected load." However, accepting this definition of the expression "connected load," and applying it, does not, in our view, vitiate the judgment of the court. The contract provides that "the minimum amount of horse power to be furnished by the company and to be paid for by the city * * * shall not be less than 70 horse power," and that there shall be paid by the city to the company "$2 for each contract horse power of connected load, which payment entitles it to consume 25 kilowatt hours of current for each contract horse power" per month.

The decree entered by agreement in cause No. 6244 required appellant to furnish appellee "a 70 horse power connected load for the operation of its waterworks system, and to comply with the contract that has been filed in this cause."

[1] Construing the above-quoted provisions of the contract in connection with the requirement of the agreed judgment, we think that by fair ascertainment it can be said that such provisions clearly require that appellant shall render available a 70 horse power current as being necessary to supply the minimum capacity of all the current consuming devices to be used by the city at its pumping station whenever necessity for such use may exist. Hence the former judgment and the contract itself both contemplated that a 70 horse power connected load shall be available at all times for the operation of the waterworks machinery. As we understand the evidence introduced in appellant's behalf, it admits that no such voltage as could be derived from a 70 horse power connected load was available to the waterworks plant during certain periods and intervals when it was necessary to operate the waterworks machinery in order to supply water. Appellant concedes this, and

gives as a reason the fact that during certain periods of the day the current used by its private patrons was so great that this current could not be supplied without disconnecting the waterworks plant. In the light of this evidence and admission, it is not necessary to determine the technical meaning of the different expressions mentioned by appellant relating to electrical science, but it is necessary only to look to the contract and the former judgment to ascertain whether or not a 70 horse power connected load, available at all times, is required by them, regardless of the precise technical meaning of the expression "connected load" or any other technical expression used in electrical science.

The court held that the provisions of the former judgment required appellant to furnish a 70 horse power connected load ready and available at all times during the period of the contract's existence. The expression in the judgment "available at all times" was not intended to have, and of course could not be given, such expansive effect as to render appellant liable in any way for failure to supply such 70 horse power connected load when such failure might be attributable to such reasons as accidents, inevitable occurrences, or causes for which appellant might not be responsible, and therefore the use of this phrase did not have the effect to disturb the provisions of the contract contained in section 7 thereof. Neither do we think that the phrase "ready and available at all times for use" conflicts with section 6 of the contract, which provides that the pumping shall be done at times selected by the company provided such selections do not interfere with maintaining a proper water supply.

We think a fair interpretation of the contract gives it the meaning that appellant was to supply a minimum of 70 horse power current to appellee's consuming devices at any time it might be required, and that the decree of the court correctly interpreted the contract to this effect as well as the mandate of the original judgment in requiring appellant to furnish a 70 horse power connected load available at all times. By making it available at all times the decree is not to be understood to mean that it shall be supplied continuously. It means that whenever it is necessary to operate the pumping machinery a minimum of 70 horse power current shall be available immediately, and that appellant must keep itself in a position to respond to the requirement of the contract in this respect.

The provision in the contract for a minimum amount of horse power, fixed at 70 horse power, and the provision in the agreed judgment requiring the appellant to furnish appellee a 70 horse power connected load, if construed to the effect contended for by appellant, would divest the city of its right under the contract to a reasonable supply of water. Such interpretation would be a subversion of the primary purpose of the contract, which was to secure for the city of Teague a reasonable supply of water.

[2] Appellant asserts that an examination of the pleadings in the former suit will disclose that the term "connected load" was not used therein, and that the pleadings made the suit primarily one for forfeiture of franchise for alleged failure of the company to provide a reasonable and efficient light system. This presents no error for our consideration. Whatever the pleadings in the former suit may have been, the judgment entered by consent was a waiver of every character of error, except fundamental error, going to the jurisdiction of the court. Any judgment which the parties to a suit cause to be entered by a bona fide agreement, no fraud being practiced in it, is binding upon them regardless of what the pleadings and evidence may be, and such judgment is conclusive as an estoppel. Lessing v. Cunningham, 55 Tex. 231; Lanier v. Blount (Tex. Civ. App.) 45 S. W. 202; 23 Cyc. 729.

Appellant complains vigorously of that portion of the judgment of the court awarding a mandamus. Various propositions are submitted in support of its assault upon the judgment in this respect. The contention is made that mandamus ought not to issue because the right asserted by the city is substantially disputed by appellant; that mandamus is not available to compel the performance of a duty owing only contingently and at irregular intervals in the future; that mandamus is a writ the issuance, use and extent of which cannot be controlled by agreement of the parties; that the agreed judgment was that the company be directed to comply with its contract, install an additional unit, or rehabilitate an existing unit in its plant, etc. And it is also contended that it was error to issue a mandamus directing the installation of machinery which the evidence shows already had been installed.

[3, 4] It is true, as contended by appellant, that, since mandamus is an extraordinary remedy, a clear and definite right to it must be disclosed before the writ will issue. At the same time, however, it must also be recognized that the granting of the writ is largely within the sound judicial discretion of the court, a discretion which is to be exercised upon principles of equity, and, unless it appears that such discretion has been abused, the judgment ordering the writ to issue will not be disturbed on appeal merely because the right to be secured by it is substantially disputed by the adverse party. We cannot say that a clear right to the mandamus to compel the maintenance of a 70 horse power connected load, available at all times, was not established by the record. The mandamus to compel this does not prescribe or require the performance of a series

of variable acts for a general course of conduct. It does not make the court the overseer, so to speak, of the performance by appellant of different and variable duties. It compels the doing of a specific thing, which is that appellant, from the date of the judgment until the expiration of the contract shall have available for the operation of appellee's waterworks plant a 70 horse power connected load. In this case the mandamus does not issue for the purpose of compelling the performance of a duty contingently and in the future at irregular intervals, but, on the contrary, it is to compel the performance of a duty owing presently and certainly. We accordingly overrule the proposition secondly above mentioned.

[5, 6] While mandamus is a writ the use and extent of which is not to be controlled by mere agreement of the parties, yet the writ in this case rests upon a judgment which, although it was entered by mutual consent of the parties, has the same force, dignity, and effect as a judgment expressing the result of a contested case.

None of the propositions advanced by appellant, except that last above stated, as complaining that mandamus ought not to issue to compel the installation of machinery already installed, is, in our opinion, meritorious. The evidence, we think, does show without dispute that the machinery which the court by mandamus directed to be installed had already been installed. Such being the case, we do not think the mandamus could issue to compel this specific thing. However, regardless of the fact that the machinery had been installed, the fact as found by the court that appellant did not furnish a 70 horse power connected load for the operation of its waterworks, available at all times, and that the failure thus to furnish such 70 horse power connected load was in violation of the former decree of the court, we think is sustained by the record, and, accordingly, although it appears that the equipment was in fact installed, yet, at the same time, the court was justified in finding that the former judgment requiring a 70 horse power connected load was not complied with, and, the mandamus requiring compliance with this feature of the judgment having been violated, the action of the court in imposing a fine of $100 we think was warranted.

We think the spirit of the contract, as well as the import of the former judgment entered by agreement of the parties, under the facts of this case justified the judgment appealed from, and, for the reasons above stated, the judgment of the court below will be affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant on motion for rehearing contends that the effect of the decree of the trial court is to render appellant liable to supply to appellee a 70 horse power connected load during the peak hours of the load required for lighting houses and supplying other current required by private contracts, even though the city should neglect or refuse to take the current at other times when tendered by appellant for the purpose of filling the reservoir. Appellant suggests that the decree is construed by both parties to this effect. The language of the decree might justify such construction. To give it this effect, however, would be to abrogate and nullify section 6 of the contract, under which section appellant is given the right to designate the hours when pumping is to be done.

The decree, as we have already construed it, does not have such effect, and it cannot be given a valid effect at variance with that expressed in our construction of it. But, since the parties have interpreted it as abrogating section 6 of the contract, we think it proper to give a more exhaustive interpretation and effect to the decree in its relation to that particular provision of the contract.

The motion for a rehearing is therefore granted, and the decree of the trial court is explicitly modified so as to give it only the following effect in relation to section 6 of the contract:

Appellant is required to keep a 70 horse power connected load available at all times during the period of the contract's existence. Appellant may select the time and hours during which all pumping shall be done, provided such hours do not interfere with maintaining a proper water supply. Should the water pumped at such times become exhausted from the reservoir through ordinary use or other necessity so as to require further pumping, then, whenever such requirement may arise, appellant, immediately upon appellee's request, shall supply a minimum 70 horse power current to the current consuming devices of appellee used for pumping water into its reservoir until the supply of water is replenished.

All costs which have accrued since the judgment of this court was originally entered are taxed against appellee. The other costs of appeal are taxed against appellant.