REAGAN COUNTY PURCHASING CO., Inc., et al. v. STATE et al.

No. 7850.

Court of Civil Appeals of Texas. Austin.
Oct. 18, 1933.

Rehearing Denied Nov. 15, 1933.

**354**

James J. Cosgrove, of New York City, G. B. Smedley, of Austin, and G. R. Pate and Burney Braly, both of Fort Worth, for appellant Continental Oil Co.

Hayes, Richardson, Shartel, Gilliland & Jordan and D. A. Richardson, all of Oklahoma City, Okl., for appellant Reagan County Purchasing Co.

James V. Allred, Atty. Gen., and R. W. Yarborough, Asst. Atty. Gen., for the State.

Nelson Phillips, of Dallas, J. C. Adams, of Tulsa, Okl., Hiner & Pannill, of Fort Worth, and Black & Graves, of Austin, for appellee Big Lake Oil Co.

C. R. Wharton, Brady Cole, and Baker, Botts, Andrews & Wharton, all of Houston, for appellee Texon Oil & Land Co.

BLAIR, Justice.

This is an appeal from an order overruling the pleas of privilege of appellants, Reagan County Purchasing Company, Inc., and Continental Oil Company, to be sued in Tarrant county. The pleas were in statutory form, and each appellant was shown to be a Delaware corporation with a permit to do business in Texas, and with its principal office in Fort Worth, Tarrant county; and neither appellant had an agent in Travis county when the state filed its suit there. The state controverted the general venue thus fixed in Tarrant county by the pleas of privilege, and sustained venue in Travis county under subdivisions 27, 29a, and 5 of article 1995.

The state's petition, which was attached to and made a part of its answers to the pleas of privilege, was introduced in evidence. The nature of the suit and facts alleged in the petition were as follows: That on December 17, 1931, the state of Texas sued nine corporations, appellant Reagan County Purchasing Company, Inc., herein called purchasing company, appellant Continental Oil Company, herein called Continental, appellees Group No. 1 Oil Company, Group No. 2 Oil Company, Texon Oil & Land Company, Texon Oil & Land Company of Texas, Big Lake Oil Company, herein called producing companies, Humble Oil & Refining Company and Humble Pipe Line Company, herein called Humble, seeking to recover $575,000 as "additional royalty" on oil produced from State University lands in the Big Lake oil field in Reagan county, between October 1, 1928, and December 1, 1931, under certain leases executed by the state to the producing companies; the leases providing that the producing companies should pay the state as royalty "a sum of money equal to one-eighth of the value of the gross production of petroleum." The petition alleged: That the producing companies sold the oil to purchasing company under what is designated "Purchasing Contract of November 24, 1924," which contract Continental guaranteed in writing by what is designated "Organization Contract of October 22, 1924," and that purchasing company resold the oil to Humble under what is designated "Resale Contract of December 15, 1924," the purchasing contract being made a part of the resale contract by reference. That after considerable operations of the aforementioned leases and contracts, the state of Texas filed its suit against all the aforementioned corporations and others in the district court of Travis county, in cause No. 42752, entitled State of Texas v. Reagan County Purchasing Company, Inc., et al., seeking to cancel the leases and contracts for certain alleged fraud attending their execution, and for alleged failure of lessees to comply with certain provisions of the statutes relating to the leasing of University lands for oil development; and, in the al-

ternative, if the leases and contracts were declared valid, the state sought to recover "its full one-eighth part of the full contract price required to be paid for the oil sold to Reagan County Purchasing Company, Inc., under said contract of November 24, 1924." That on October 12, 1928, judgment was entered in said cause, which was signed and agreed to by each of the aforementioned corporations. That the judgment referred to the organization contract, the purchasing contract, and the resale contract, and decreed that all "are contracts, as adjudicated by the court, beneficial to the State," and decreed that the state was not entitled to cancel them for the fraud and irregularities alleged. That the judgment further decreed that producing companies should pay the state $1,000,000 in satisfaction of its past claims to October 1, 1928, for its interest in the oil produced and sold under the leases and contracts, and further decreed that the state would be due in the future, as its one-eighth royalty, sums equal to one-eighth of the price paid by the purchasing company to producing companies under the purchasing contract and the resale contract, which sums should be paid the state in monthly payments. The judgment further decreed as to future operations of the leases and contracts as follows:

"* * * But this judgment is not to be taken as a construction of the Purchasing Contract of November 24, 1924, as applied to sales of oil under said contract, made prior to October 1, 1928, and the future construction of this contract shall remain open just as though this decree had not been rendered, except that no questions may be raised as to payments or liability claimed for oil delivered prior to October 1, 1928. In the future if the Reagan County Purchasing Company, Inc., shall ascertain and pay the Big Lake Oil Company and/or Group No. 1 Oil Corporation a price for said oil which said Big Lake Oil Company and/or Group No. 1 Oil Corporation should deem insufficient under a proper construction of the price clause of the said contract, and a controversy should arise as to the proper construction thereof, then the State shall join the Producing Company or Companies or intervene in such suit or suits as shall be necessary to construe the contract and recover the additional amount claimed, and shall be bound by any such final judgment which may be rendered by a court of competent jurisdiction construing said contract and decreeing the correct amount due thereon."

The petition further alleged that the state had a beneficial interest in the aforementioned contracts because the amount of its one-eighth royalty under the leases was made dependent upon and determined by the liability of appellant purchasing company to producing companies under the purchasing contract of November 24, 1924, and the judgment of October 12, 1928, which judgment had the effect of a contract in writing because it was signed and entered by agreement of the parties, and which judgment decreed the state a beneficial interest in the purchasing contract, particularly in its price clause, with the incidental right to question the construction placed upon the price clause, or the method or manner employed by the purchasing company for determining its net profits in any appropriate litigation. The petition alleged that a controversy had arisen between purchasing company and the producing companies concerning the true construction of the price clause of the purchasing contract, and further alleged the method or manner employed by the purchasing company in construing the price clause, that same was a misconstruction, and that it had resulted in the purchasing company paying the producing companies too small an amount for the oil, and that the state in turn had been underpaid on its one-eighth royalty, and that a proper construction would have entitled it to the additional royalty sued for.

The state proved substantially the foregoing allegations of its petition. An examination of the agreed judgment shows a prima facie basis for the constructions and interpretations placed upon it by the pleadings of the state, both as an adjudication and as a contract. The state also proved that, if its construction of the price clause of the purchasing contract is found to be correct, then under the facts alleged and proved it will be entitled to recover the additional royalty sued for. The state further alleged and proved that the additional royalty sued for was, by statute and the terms of the leases, payable in Austin, Travis county, Tex., and that the judgment of October 12, 1928, was agreed to and signed and entered in Travis county, Tex.

■ We have reached the conclusion that the state's suit against appellant purchasing company was maintainable in Travis county, because it was shown to be a foreign corporation and the cause of action asserted against it by the state was based in part upon the judgment of October 12, 1928, and upon the agreement of the parties as evidenced thereby, entered and made in Travis county, with the necessary result that a part of the cause of action arose in Travis county within the meaning of subdivision 27 of article 1995. By the judgment it was adjudicated by the court that the state had a beneficial interest in the purchasing contract of November 24, 1924. It was signed and entered upon agreement of the parties and consequently became a contract as well as an adjudication between them. Telluride Power Co. v. City of Teague (Tex. Civ. App.) 240 S. W. 950;

356

Lessing v. Cunningham, 55 Tex. 231; Buffalo Bayou, etc., Railway Co. v. Ferris, 26 Tex. 588; Corpus Juris, vol. 34, pp. 133, 134; Evans v. Williams (Tex. Civ. App.) 194 S. W. 181; Missouri, K. & T. Ry. Co. v. State (Tex. Civ. App.) 275 S. W. 673. It was therefore adjudged by the court and agreed to by the parties, including appellant purchasing company, that the state had a beneficial interest in the purchasing contract, and particularly the price clause thereof; and concerning any future controversy with regard to a proper construction of the price clause, the court adjudicated and the parties agreed that it would be settled in one suit to which the state, the producing companies, and the purchasing company would be parties, thereby adjudicating and giving the state the incidental right to bring suit against all parties to the judgment for the purpose of construing and determining the rights and liabilities of the parties under the purchasing contract. The judgment and agreement thereto were entered and made in Travis county. It is therefore manifest that cause of action asserted by the state arose in part in Travis county; and, since appellant was shown to be a foreign corporation, the suit was maintainable in Travis county under subdivision 27 of article 1995, which provides that "foreign corporations * * * may be sued in any county where the cause of action or a part thereof accrued." On principle the following authorities sustain our above conclusions: Hoffer Oil Corp. v. Brian (Tex. Civ. App.) 38 S.W.(2d) 596, 597; Stone Fort Natl. Bank v, Forbess (Tex. Civ. App.) 41 S.W.(2d) 695; Bradley v. Trinity State Bank, 118 Tex. 274, 14 S.W.(2d) 810; Benson v. Travelers' Ins. Co. (Tex. Civ. App.) 40 S.W.(2d) 966; San Jacinto Life Ins. Co. v. Boyd (Tex. Civ. App.) 214 S.W. 482; Texas Farm Mtg. Co. v. Starkey (Tex. Civ. App.) 25 S.W.(2d) 229; Texas Portland Cement Co. v. Carsey (Tex. Civ. App.) 3 S.W.(2d) 930; 11 Texas Jurisprudence, 53–62, and cases there cited.

■ We are also of the opinion that the venue of the state's suit was properly laid in Travis county against the producing companies to recover any additional royalty due on the leases; and, since the amount of the state's recovery was dependent upon and determinable by a proper construction of the price clause of the purchasing contract of November 24, 1924, and since by the judgment of October 12, 1928, it was adjudicated and agreed by the parties that the state had a beneficial interest in the purchasing contract, and that any future controversy as to the construction of the price clause of the purchasing contract would be settled in one suit, to which the state, the producing companies, the purchasing company, and the others having an interest would be made parties, the purchasing company is therefore a nec-

essary party to the state's suit within the meaning of subdivision 29a of article 1995, which provides: "Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

The state's suit necessarily involved a construction of the price clause of the purchasing contract, because the amount of the additional royalty sued for was dependent upon and determinable by a proper construction of said price clause. The judgment of October 12, 1928, shows on its face that the court adjudged, and the parties agreed, that the state had a beneficial interest in the purchasing contract, and that the purchasing company should be a party to any suit by the state and the producing companies involving any future controversy with regard to a proper construction of the price clause of the purchasing contract. In so entering the judgment, which was consented to by the parties, the court and the parties must necessarily have had in mind the express provision of the purchasing contract, making all of its terms covenants running with the leases to the producing companies, and the option in the purchasing contract providing that "from the purchase price of any oil delivered by any Producer to the Purchasing Company hereunder, the Purchasing Company may deduct and remit by separate funds payable to the order of the State of Texas the amount equivalent to the royalty due from such Producer on said oil to the State of Texas or its assigns."

The judgment also contemplated, and the parties agreed, that a construction of the price clause should be binding alike on all parties at interest; and it was therefore proper to decree that any future controversy concerning the construction of the price clause of the contract should be determined in one suit between all contracting and judgment parties. So, in view of the case thus pleaded and the character of the relief sought by the state, the Purchasing Company was a necessary party to the state's suit under subdivision 29a of article 1995, supra. American Soda Fountain Co. v. Hairston Drug Co. (Tex. Civ. App.) 52 S.W.(2d) 764; Duvall v. Boyer (Tex. Civ. App.) 35 S.W.(2d) 181; Empire Gas & Fuel Co. v. State (Tex. Civ. App.) 21 S.W.(2d) 376, affirmed (Tex. Sup.) 47 S.W.(2d) 265; Montgomery v. Owen (Tex. Civ. App.) 37 S.W.(2d) 1107; Sproles v. Schepps (Tex. Civ. App.) 26 S.W.(2d) 922; Rowan v. Wurzbach (Tex. Civ. App.) 44 S.W. (2d) 1033; Roberts v. Bludworth (Tex. Civ. App.) 295 S. W. 210; Lind v. Merchants' State Bank & Trust Co. (Tex. Civ. App.) 16

S.W.(2d) 385; McLeroy v. Thrift, Inc. (Tex. Civ. App.) 22 S.W.(2d) 497; Shields v. Barrow, 58 U. S. (17 How.) 130, 15 L. Ed. 158.

■ The venue of the state's suit against appellant purchasing company was also properly maintainable in Travis county under subdivision 5 of article 1995, providing that "if a person has contracted in writing to perform an obligation in a particular county, suit may be brought * * * in such county," because the effect of the purchasing contract of November 24, 1924, was a contract in writing to pay the additional royalty sued for by the state in Austin, Travis county, Tex., when such contract is construed and considered in connection with the judgment of October 12, 1928, and the leases and statutes requiring such royalty to be paid in Austin, Travis county, Tex. The leases in question made all royalty due the state thereunder payable in Austin, Travis county, Tex. They were executed under chapter 83, Gammel's Laws, Reg. Sess. 35th Leg.; and section 7 thereof required that all royalty due the state shall be paid at Austin, Travis county. A general statute, article 5381, relating to royalties due the state under leases for oil and gas development shall be payable by certain methods "and shall be due and payable to the Commissioner at Austin." The purchasing contract of November 24, 1924, by express provision made all its terms covenants running with said leases. The purchasing contract expressly provided that "from the purchase price of any oil delivered by any Producer to the Purchasing Company hereunder, the Purchasing Company may deduct and remit by separate funds payable to the order of the State of Texas the amount equivalent to the royalty due from such Producer on said oil to the State of Texas or its assigns." Under this provision of the purchasing contract purchasing company was potentially liable, depending upon the exercise of the right so reserved, to make such payments of royalty due the state as would fully discharge all liability of the producing companies therefor under the leases. The state filed its suit to cancel the leases and contracts, including the purchasing contract; and, in its alternative suit for royalty as measured by the price clause of the purchasing contract if the leases and contract were held to be valid, the state pleaded the above provision to pay all royalty due under the leases directly to the state as fixing the liability of the purchasing company to the state for any royalty due on the leases. The agreed judgment of October 12, 1928, gave the state a beneficial interest in the purchasing contract, which beneficial interest was its royalty interest, with the incidental right to institute proceedings to recover it. It is therefore reasonable to conclude that the purpose of the agreed judgment was to adjudicate, and to agree in writing, that the purchasing company would be liable to the state for any royalty which might become due under the contemplated future operations of the leases and contracts, and particularly that which because of purchasing company's erroneous construction of the price clause of the purchasing contract it claimed not to owe, thereby necessitating a suit by the state to recover it, and that such royalty would be paid in accordance with the terms of the leases, at Austin, Tex.

In the case of Empire Gas & Fuel Co. v. State (Tex. Civ. App.) 21 S.W.(2d) 376, affirmed by Commission of Appeals, 47 S.W.(2d) 265, it was held that the statutes regulating the place of payment of oil royalties are read into and made a part of the lease contracts for development; and the same rule would necessarily apply to any other contract obligating the party or parties to pay the royalties due under such leases. And particularly is the rule applicable to the purchasing contract in question, because the amount of royalty due is made dependent upon and determinable by a proper construction of its price clause, because by its express provision its terms were made covenants running with the leases, binding on the parties and subsequent assignees, because it reserved the right in purchasing company to pay all royalty due the state under the leases, and because it was adjudicated by the judgment of October 12, 1928, and agreed to by the parties, that the state had an interest in the contract, with the incidental right to institute court proceedings for a proper construction of the contract, particularly its price clause. In view of these facts and transactions, we think the parties necessarily agreed that with regard to operations of the leases after the judgment, or after October 1, 1928, the leases, the various contracts, including the purchasing contract, the provisions of the judgment, and the agreements evidenced thereby, would become inseparable integral parts of a general operation contract to develop and market the oils produced from the leases, and that, in carrying out or performing the general contract, each of the parties should perform the obligation imposed upon him in accordance with the general operation contract. From this conclusion, that the effect of the leases, contracts, and judgments was to form a general operation contract, binding alike upon all the parties, it follows that purchasing company has agreed in writing, at least by implication, to pay the royalty due the state under the leases in Travis county.

■ If the state's suit against appellant purchasing company for a construction of the price clause of the purchasing contract was properly maintainable in Travis county, as we have hereinabove held, then it necessarily follows that for the same reasons the state's suit against appellant Continental was main-

tainable in Travis county, because the state's
suit against the Continental was to enforce
its written contract of October 22, 1924, guaranteeing the performance of the purchasing
contract, and because Continental was a party to and bound by the agreed judgment of
October 12, 1928, by which it was adjudicated,
and agreed by the parties, that Continental
would be made a party to any litigation to
construe the price clause of the purchasing
contract.

The Continental was also a necessary party to the state's suit against the producing
companies for additional royalty as measured by a proper construction of the price
clause of the purchasing contract, the performance of which Continental guaranteed
by its written contract of October 22, 1924,
and in which contract of guaranty the state
was adjudicated and agreed to have a beneficial interest by the agreed judgment of
October 12, 1928, and by which judgment it
was further agreed that Continental would
be made a party to any litigation to construe
the price clause of the purchasing contract.

■ Both appellant purchasing company
and appellant Continental contend that the
judgment of October 12, 1928, particularly
the portion adjudging the state to have a beneficial interest in the contracts sought to be
canceled, including the purchasing contract,
and the portion providing that all parties
thereto should be made parties to any subsequent litigation concerning a disputed construction of the price clause of the purchasing contract, was void because not based upon sufficient pleadings. We have examined
the pleadings, and conclude that they are sufficient to support the judgment, at least in so
far as the venue hearing involved a construction or interpretation of the pleadings. However, the judgment is not void on its face, and
whether it is valid or what constitutes its effect are questions which go to the merits of
the case, and are not determinable on the venue question. Bradley v. Trinity State Bank,
118 Tex. 274, 14 S.W.(2d) 810; Salisbury v.
Taylor (Tex. Civ. App.) 5 S.W.(2d) 874;
Southern Surety Co. v. Solomon (Tex. Civ.
App.) 4 S.W.(2d) 599. The attack made is also a collateral attack upon a valid judgment,
which shows on its face that it was signed
and agreed to by the parties, and that it has
long since become final; no appeal having
been taken from it. The general rule is that
a judgment cannot be attacked in a collateral
proceeding because based on defective pleadings. Volume 1, Freeman on Judgments (5th
Ed.) § 365. But, aside from these conclusions,
the judgment was signed and entered upon
agreement of the parties, and it is therefore
a contract in addition to an adjudication,
and, under the well-settled rule with regard
to a judgment by consent or agreement, it
may stand as a contract even though it fall
as an adjudication. Telluride Power Co. v.

City of Teague (Tex. Civ. App.) 240 S. W.
950; Lessing v. Cunningham, 55 Tex. 231;
Buffalo Bayou, etc., Ry. Co. v. Ferris 26 Tex.
588; Corpus Juris, vol. 34, pp. 133, 134. As a
contract, it provided that the state had a beneficial interest in the contracts, and that the
state had the incidental right to sue in the future for a proper construction of the price
clause of the purchasing contract, making
the parties to the contract parties to the suit.

The appellants also contend that the judgment of October 12, 1928, does not authorize
a suit by the state for royalty measured by
the price clause of the purchasing contract,
because such interpretation would be contrary, first, to that portion of the judgment
which provides that "nothing in this judgment shall affect the interpretation or construction of the leases involved in accordance
with the terms thereof"; and, second, to that
portion which provides, "that nothing in the
former judgment shall be construed as adding any obligation, change, burden or risk on
the Purchasing Company not already assumed by the Company under the Purchasing
Contract." We do not sustain these contentions. The interpretation of the price clause
of the Purchasing Contract cannot affect the
"interpretation or construction of the leases"
in accordance with their terms. Nor does the
giving the state the right to participate in a
suit for the purpose of construing the price
clause of the purchasing contract add any
burdens or obligations to those already assumed by the purchasing company under the
contract. The obligations remained the
same; and the suit is merely to determine
what the obligations are, and not to add anything to them. These provisions of the judgment can be given full effect and still recognize and give full effect to the judgment and
contract evidenced thereby, providing that
the state has an interest in the purchasing
contract, with the incidental right to maintain this action for the proper construction
of its price clause.

■■ The question of want of constitutional authority on the part of the state to make
the agreement to become a party to any litigation having for its purpose the construction
of the price clause of the purchasing contract
is not determinable on the venue hearing.
The authorities are uniform in holding that
on the venue hearing the state was only required to establish a prima facie case in respect to the existence of the ground or
grounds of venue upon which it relied, and
that it need not go into the merits of its case.
Bradley.v. Trinity State Bank, 118 Tex. 274,
14 S.W.(2d) 810; McCormick v. West Tex.
Lbr. Co. (Tex. Civ. App.) 55 S.W.(2d) 191;
Thomason v. Haskell Natl. Bank (Tex. Civ.
App.) 56 S.W.(2d) 242; Coca-Cola Bottling
Co. v. Way Engineering Co. (Tex. Civ. App.)
18 S.W.(2d) 251; Davis v. Texas Life Ins. Co.

(Tex. Civ. App.) 22 S.W.(2d) 960. The state established a prima facie right to recover additional royalty by pleading and proving the execution and existence of the leases, the various contracts involved, and the entry of the judgment, and the agreements evidenced thereby, and the existence of other facts which entitled it to maintain venue of its suit in Travis county against appellants under subdivisions 27, 29a, and 5 of article 1995, as hereinabove determined.

The state's petition alleged that the purchasing company had defaulted in paying the producing companies the full amount due for the oil under the price clause of the purchasing contract, properly construed, and that the state in turn had been underpaid on the royalty; the amount being one-eighth of the amount due by purchasing company to the producing companies. The producing companies adopted the construction placed on the price clause of the purchasing contract by the state, and each in turn filed a cross-action against purchasing company, alleging that, if the state was entitled to recover any sum of money as additional royalty, then each producing company was entitled to recover, with regard to its particular lease, from purchasing company eight times the sum of money that the state was entitled to recover from it. To these cross-actions appellant purchasing company filed pleas of privilege. The pleas were duly controverted, and on the hearing thereof venue of the cross-action was correctly sustained in Travis county.

If the state's suit against either the purchasing company or the producing companies was properly maintainable in Travis county, under either subdivisions 27, 29a, or 5 of article 1995, as hereinabove held, then the cross-actions of the producing companies against the purchasing company were maintainable in Travis county, because they arise out of the same transactions and involve the same issues of fact and law.

It was not claimed that the producing companies had defaulted in respect to the payment to the state of a full one-eighth of the purchase price collected by them from the purchasing company, but the claim was that the purchasing company had defaulted in making payment to the producing companies under the purchase contract, as set forth in the state's petition, with the result that the producing companies had been underpaid in large sums of money, and that the state had likewise failed to receive its one-eighth of that amount. In substance, these facts were pleaded by each producing company as the basis for its cross-action. It therefore appears that the same evidence which would establish the state's right to recover the amount of royalty sued for will likewise establish the right of each producing company to recover with respect to its particular lease eight times the amount alleged by the state to be due it under the purchasing contract for oils which had been sold and delivered by the producing companies to the purchasing company.

It further appears from the allegations and proof adduced on the hearing of the pleas of privilege that the cross-actions were properly joined with the main action brought by the state as tested by the rules governing the joinder of causes of action; and venue of the cross-actions was therefore properly maintainable in Travis county under the well-settled rule intended to avoid a multiplicity of suits.

The primary purpose of the state's suit, as well as the cross-actions of producing companies, was to construe the price clause of the purchasing contract, in which contract the judgment decreed and the parties agreed that all parties to this suit had an interest; and under the peculiar facts and circumstances of this case as above detailed, and in order to avoid a multiplicity of suits involving the same transactions, provable by the same evidence, both the state's suit and the cross-actions should be and are maintainable in Travis county. Warner v. Gohlman, Lester & Co., 117 Tex. 145, 298 S. W. 890; Middlebrook v. Bradley Mfg. Co., 86 Tex. 706, 26 S. W. 935; Stevens v. Wilson, 120 Tex. 584, 39 S.W.(2d) 1088; National Surety Co. v. Atascosa Ice, Water & Light Co. (Tex. Com. App.) 273 S. W. 821; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Richardson v. D. S. Cage Co., 113 Tex. 152, 252 S. W. 747; Sumner v. Jester (Tex. Civ. App.) 252 S. W. 1088; Penix v. Davis (Tex. Civ. App.) 265 S. W. 718.

The orders appealed from are affirmed.

Affirmed.