**Loyd Keith NICHOLS & Rochelle Dalene Kelsey, Appellants,**

**v.**

**Jean Ellen NICHOLS, Appellee.**

No. 12–93–00270–CV.

Court of Appeals of Texas, Tyler.

April 5, 1995.

Rehearing Overruled May 10, 1995.

Robert A. Goodwin, Center, for appellants.

Joseph Bailey, Center, for appellee.

HOLCOMB, Justice.

This is an appeal from a dismissal of an "Agreed Final Decree of Divorce." Appellants contend that the court erred when it granted the wife a new trial and non-suited the divorce after the husband died, without giving notice to the deceased's statutory heirs. Appellants also challenge the sufficiency of the evidence to support the wife's allegations that: (1) she was under duress when she entered into the final decree of divorce; (2) the community assets were inadequately addressed in the decree; and (3) she did not know the significance of the terms of the final decree of divorce before it was entered. We will affirm.

Loyd Nichols, ("Loyd") and Jean Nichols, ("Jean"),[1] were married on June 11, 1987. Loyd had two children by a previous marriage, Loyd Keith Nichols ("Keith") and Rochelle Dalene Kelsey ("Rochelle"), who are the Appellees. Approximately six months after they were married, Loyd was diagnosed with amyotrophic lateral sclerosis, or ALS (commonly known as Lou Gehrig's Disease). Loyd tried to work at their business, an Interstate Battery franchise, but became bedridden. Loyd required constant, intensive, medical care, which included the use of a ventilator 24–hours a day and a life-support system. Initially, Jean hired nurses to care for Loyd 24–hours a day, seven days a week. As the illness progressed, Loyd became unable to speak and began communicating by moving one finger to respond to questions.

During this time, Loyd and Jean made significant decisions regarding their assets. Loyd and Jean executed a joint last will and testament that devised all of their assets to the surviving spouse. Loyd designated his son, Keith, as the primary beneficiary on two insurance policies which had a total face val-

1. Throughout this opinion, the parties will be referred to by their first names for clarity.

ue of $32,444.00. He left Jean as the primary beneficiary of five other policies which had a total face value of $67,928.00. Loyd also kept Keith and Rochelle as primary beneficiaries on an American Express Life Insurance Policy valued at approximately $75,000.00.

By August of 1992, Loyd's million dollar medical insurance policy was completely depleted by his three year illness. On September 6, 1992, the nursing service asked Jean to pay a $30,000.00 nursing bill for Loyd's care for the month of August. With no health insurance coverage, Jean could no longer afford to pay for Loyd's 24–hour nursing care. Jean began administering the medical care for Loyd and paid for nurses to relieve her only as she needed them. At the same time, Jean continued to maintain and operate the business she and Loyd owned. According to Jean, she became exhausted mentally, physically, and financially.

Shortly after the health insurance expired, Linda Dingler, Loyd's sister, suggested that the couple divorce so that Loyd could qualify for Medicaid. Dingler stated that this decision would provide funds for Loyd's medical care and would ease Jean's physical and financial burden. A representative of a state agency confirmed that Loyd would qualify for Medicaid if Loyd's assets consisted of only a vehicle and a home. Acting on this information, Loyd and Jean decided to divorce.

On September 14, 1992, Jean filed as the petitioner in an "Original Petition for Divorce" and was represented by William J. Barton. The petition alleged that the parties had separated on September 11, 1992, and that Jean anticipated that the parties would agree to the terms as outlined within the final decree. Jean and Loyd agreed that the property would be transferred between the couple in accordance with the Medicaid requirements after the divorce. Because Medicaid permitted recipients to own a home, Loyd was going to trade his one-half interest in the business to Jean in exchange for her one-half interest in the house. After Jean consulted with her attorney, the divorce decree was prepared. Barton later testified that he never advised Jean on the affect that

a divorce would have on any life insurance beneficiary designation that Loyd may have made for her.

Initially, Loyd was reluctant to sign the waiver of citation and the agreed decree. Jean asked Keith to assist her in persuading his father to sign them. On March 15, 1993, Loyd finally signed both the waiver and the agreed decree with an "X," using his nurse, Debbie Willford, and Keith as witnesses. According to Loyd's nurse, Loyd agreed to sign the documents only after Keith told Loyd that Keith would not be able to take care of him. On March 19, 1993, Jean appeared before the court to enter the agreed decree with Joseph Bailey, who appeared on behalf of Barton because Barton was hospitalized. After a brief evidentiary hearing, the court granted the divorce and the final decree was entered. No record was made. Loyd died around midnight that same night.

On April 6, 1993, Jean filed a verified "Motion to Set Aside Judgment and Grant a New Trial," which alleged:

(1) That the decree of divorce was entered into because of duress on the part of both parties;

(2) that community assets and other property issues were inadequately addressed in the decree; and

(3) that [she] was not aware of the significance and inequity of these issues at the time of the final hearing on the divorce and that [she] was unaware until she had consulted with [her] attorney, Bailey.

The court heard Jean's motions *ex parte,* without notice to either Keith or Rochelle. Contrary to what is stated in the divorce decree, Jean testified that she and Loyd never actually separated. Jean continued to constantly care for her husband and was with him when he passed away. Upon learning that she would not be able to collect on Loyd's insurance policies, she realized that she had made a mistake when she entered the decree and contacted her attorney. At the conclusion of the hearing, the court granted the motion to set aside the judgment, granted a new trial and dismissed the suit.

On April 30, 1993, Keith and Rochelle filed a "Motion to Set Aside the Dismissal and Reinstate the Divorce Decree," which the court heard on June 3, 1993. At the hearing, Jean called six witnesses to testify. The witnesses confirmed that during the last stages of Loyd's illness, Jean provided a significant part of his medical care while she managed their business. It is clear in the record that Loyd and Jean agreed to get a divorce as a last resort, and only because they needed help. Witnesses testified that Loyd's care was accomplished largely by Jean's efforts and that neither of Loyd's children had any significant role in that regard. During the six months the divorce was pending, Jean had incurred approximately $79,000.00 in debts against the business, she had borrowed $15,000.00 against their home, and she had sold her car to obtain money to pay for her living expenses and Loyd's care. The court overruled Keith and Rochelle's motions, and they perfected their appeal.

In their first point of error, Appellants contend that the trial court erred when it granted Jean's motion to set aside judgment and grant a new trial. They argue that Jean was attempting to evade the terms of an agreed decree despite her understanding with Loyd about the appropriate division of their assets. They point out that Jean drafted the divorce decree and that the decree divided the community estate equitably between the parties. Appellants contend that the only reason Jean filed the motions to set aside the divorce decree was because she had discovered that she would not collect the proceeds from the insurance policies in which Loyd had designated her as beneficiary.

Although Appellants cite several cases to support their position, the facts in this case are unusual. Not any case precisely addresses whether a court can grant a new trial after it has entered an agreed divorce decree, and after one of the parties to the decree has died. However, in *Turner v. Ward*, No. 08–93–00313, slip op. at 104, —— S.W.2d ——, —— [1994 WL 601915] (Tex. App.—El Paso November 3, 1994, n.w.h.), the El Paso Court of Appeals has addressed a similar issue. In *Turner*, the husband filed for divorce. At the time the divorce was granted, the wife had filed a waiver of citation. Sixteen days after the final divorce decree was entered, the husband was killed. While the trial court had plenary power, the wife filed a motion for new trial alleging that her husband had fraudulently procured her signature on the agreed decree and that the decree did not accurately address their community property interests. She testified that when she signed the decree, she thought she was only agreeing to a name change. The trial court granted a new trial, and thereafter dismissed the divorce action. Twenty-four days later, the husband's children from a previous marriage filed a motion to set aside the dismissal order. The court conducted a hearing on the children's motion, but a different judge presided and set aside the previous order. After the wife appealed, the appellate court reversed the trial court's order and stated:

> We first address the argument of the [the children] that the trial court could not grant a new trial in the divorce actions after the death of Llewellyn Devane Turner [the husband].

When a party to a suit dies, the suit will not abate if the cause of action survives the death of that party. TEX.R.CIV.P. 150. Divorce actions do not survive the death of a party; they are personal to a spouse in a marriage. *McKenzie v. McKenzie*, 667 S.W.2d 568, 571–72 (Tex.App.—Dallas 1984, no writ); *Garrison v. Garrison*, 568 S.W.2d 709, 710 (Tex.Civ.App.—Beaumont 1978, no writ). Hence, if a party in a divorce action dies prior to the rendition of judgment on the merits, the action is abated and should be dismissed. *McKenzie*, 667 S.W.2d at 570.

When a trial court renders judgment on the merits in a divorce case, the cause does not abate when a party dies, and the cause cannot be dismissed because it has abated. *Novotny v. Novotny*, 665 S.W.2d 171, 173 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd); *see Verret v. Verret*, 570 S.W.2d 138, 140 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *McKenzie*, 667 S.W.2d at 572. This does not mean the trial court loses control over its judgment; *the trial court retains plenary power to modify its judgment during the time peri-*

ods provided by Rule 329b of the RULES OF CIVIL PROCEDURE. *Verret*, 570 S.W.2d at 140; *Austin v. Austin*, 553 S.W.2d 9, 11 (Tex.Civ.App.—Eastland 1977, writ dism'd). The trial court may still deny the divorce. *Austin*, 553 S.W.2d at 11.

These cases should be distinguished from those cases dealing with the mootness of appeals from a divorce decree. An appeal from a divorce decree becomes moot when a party to the divorce dies during the pendency of the appeal. *See Dunn v. Dunn*, 439 S.W.2d 830, 833–34 (Tex.1969); *Black v. Black*, 673 S.W.2d 269, 270 (Tex.App.—Texarkana 1984, no writ); *Walsh v. Walsh*, 562 S.W.2d 501, 502 (Tex.Civ.App.—San Antonio 1978, no writ). An exception exists, however, where the divorce decree significantly affects the property rights of the parties. *Dunn*, 439 S.W.2d at 834. Of course, this exception probably swallows the rule because the marital status of the parties will usually significantly affect their property rights when the issue is raised. Mootness will be a factor most often in divorce appeals in regard to child custody issues, *see Black*, 673 S.W.2d at 270; *Walsh*, 562 S.W.2d at 502, because the issue of custody does not affect the parties' property rights.

In summary, the cases above dictate the relationship of the judgment and the underlying cause in the following manner: (1) until judgment on the merits is rendered, **a death of the party abates the cause and it must be dismissed;** (2) after judgment is rendered, the cause does not abate upon the death of the party, but the judgment can be modified or withdrawn, or a new trial granted, during the period of the trial court's plenary power; and (3) the court of appeals has jurisdiction of the appeal after the death of a party if the divorce decree substantially affects the parties' property rights.

(Emphasis added.)

*Turner v. Ward*, No. 08–93–00313, slip op. at 110, —— S.W.2d at ——. We concur with the El Paso Court's reasoning that the trial court has the discretion to grant a new trial within the time frame that the court has plenary

jurisdiction, even if one of the parties dies after the decree is entered.

■ Next, we must determine whether the trial court abused its discretion when it granted Jean's motion for non-suit. An appellate court may reverse a trial court when it abuses its discretion only if, after reviewing the record in light of all of the circumstances, it is clear that the court's decision was arbitrary and unreasonable. *Central Mutual Ins. Co. v. Dunker*, 799 S.W.2d 334, 338 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970).

■ At the motion for new trial hearing, Jean testified that she and Loyd never separated nor did they ever intend to separate. She stated that the only reason that she and Loyd had agreed to divorce was so that Loyd could qualify for financial assistance from Medicaid. Jean also testified that they purposely divided their property so that Loyd would obtain ownership of the house, which was allowable under the guidelines of Medicaid. During Loyd's illness, the record is clear that the parties were under intense emotional stress which was exacerbated by intense financial difficulties that had been caused by the depletion of Loyd's health insurance coverage. We believe that the court's rulings were made in deference to Loyd and Jean's desperate attempts to mentally and financially survive. Significant information was brought forth by the witnesses to support the court's decision that, in the interest of justice, it should grant a new trial to Jean because the parties had been under extraordinary emotional and financial stress. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985) (orig. proceeding); *Champion Int'l, Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding). Therefore, we conclude that the trial court's action was neither arbitrary nor unreasonable. Appellants' first point of error is overruled.

We turn next to the Appellants' second point in which they complain that the court erred when it granted Jean's motion for non-suit without giving notice to Loyd's statutory heirs or any other interested party. As previously stated, the motion for new trial and

the subsequent non-suit were presented to the court *ex parte*, without notice to any of the heirs at law. In this regard, Appellants cite TEXAS RULE OF CIVIL PROCEDURE 162, which provides:

At any time *before* the Plaintiff has introduced all of his evidence other than rebuttal evidence, the Plaintiff *may dismiss the case or take a non-suit,* which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21(a) on any party who has answered or has been served with process without the necessity of a court order. Any dismissal pursuant to this Rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk.... (Emphasis added.)

Several rules found in the TEXAS RULES OF CIVIL PROCEDURE address the manner in which pending litigation is handled after one of the parties has died, which are:

RULE 150. Death of a Party. Where the cause of action is one which survives, no suit shall abate because of death of any party thereto before the verdict or decision of the court is rendered, but such suit may proceed to judgment as hereinafter provided.

RULE 151. Death of Plaintiff. If the Plaintiff dies, the heirs, or the administrator or executor of such decedent may appear and upon suggestion of such death being entered of record in open court, may be made plaintiff, and the suit shall proceed in his or their name.

RULE 152. Death of Defendant. Where the defendant shall die, upon the suggestion of death being entered of record in open court, or upon petition of the plaintiff, the clerk shall issue a *scire facias* for the administrator or executor or heir requiring him to appear and defend the suit and upon the return of such service, the suit shall proceed against such administrator or executor or heir.

RULE 156. Death after verdict or close of Evidence. When a party in a jury case dies between verdict and judgment, or a party in a non-jury case dies after the

evidence is closed and before judgment is pronounced, judgment shall be rendered and entered as if all parties were living.

Under Rule 152, it is mandatory that the clerk issue a *scire facias* to the heir after the defendant dies. We agree that Appellants were Loyd's heirs and that they had an interest in the court's orders that were entered after Loyd's death. Therefore, they should have received notice of Jean's motion for new trial and motion for non-suit. Although the Appellants were necessary parties who should have received notice of any post-judgment proceedings that affected their father's estate, we do not believe that Appellants were harmed by the action taken by the trial court. Regardless of their lack of notice, Appellants' due process rights were protected by the hearing that was set after Appellants filed a motion to set aside the previous order of dismissal, and asked the court to reinstate the final divorce decree. Although Appellants were given an opportunity to be heard and offer evidence, they did not offer any evidence other than to cross-examine the witnesses that Jean had called to the witness stand. Prior to entering its order on Appellants' motions, the court sent a letter to the parties explaining his ruling, which stated: "I base the above ruling on my finding that although the final decree of divorce was an agreed order entered with the consent of both parties, *the health and financial circumstances of the parties constituted duress in this case* and called for the granting of the Petitioner's motion for new trial." (Emphasis ours.) After the court granted the new trial, Jean, as the Petitioner, was entitled to take a non-suit in the case if she so desired. Although Appellants were not given notice of Jean's original motions their rights were protected because they had an ample opportunity to be heard as if they had received notice in accordance with TEXAS RULE OF CIVIL PROCEDURE 21a. Appellants' second point of error is overruled.

In their third point, Appellants challenge the sufficiency of the evidence to support the allegations contained in Jean's motions to set aside the agreed decree of divorce. Appellants claim that, contrary to the court's or-

der, neither Jean nor Loyd was under any duress, the parties' community assets were adequately addressed in the final judgment, and Jean was fully aware of the significance of the terms of the final decree of divorce. We do not agree.

 Neither party requested findings of fact and conclusions of law; therefore, we are compelled to uphold the judgment of the trial court on any theory of law applicable to the case. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987). In making this determination, we consider only the evidence most favorable to the implied factual findings and will disregard all opposing or contradictory evidence. *Renfro Drug v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

What constitutes duress is a question of law, but whether a person acted voluntarily or as a result of duress is a question of fact. *Lampkin v. Lampkin,* 480 S.W.2d 35, 37 (Tex.Civ.App.—El Paso 1972, no writ). The duress that Jean alleged in her motion for new trial was the extreme emotional, physical, and financial stress that she and Loyd were under, which compelled them to seek a divorce. Jean and Loyd never intended to separate. Jean continued to spend the night at their home and stayed at Loyd's bedside until he died. Sherroll Neil, an owner of the home health agency that provided Loyd's nurses, testified that the cost of Loyd's skilled nursing services was a minimum of $28,000.00 per month. After the medical insurance was depleted, Jean, by necessity, became Loyd's primary care-giver. Jean discussed Medicaid and a divorce with Loyd at a time "after she already had to start staying up 24 hours a day by herself and [had tried] to take care of him." The parties entered into the divorce for the sole purpose of aligning their assets so that Loyd could qualify for financial assistance from Medicaid. The parties could no longer provide Loyd with the medical care that he desperately needed to preserve his life. Clearly, there was sufficient evidence for the court to have found that the extreme duress caused by the emotional, physical, and financial stress of Loyd's illness forced Jean and Loyd to overcome their will and caused them

"to do that which they would not otherwise have done and were not legally bound to do." *Matthews v. Matthews,* 725 S.W.2d 275 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). We hold that there was sufficient evidence to show that the trial court did not commit error in setting aside the judgment and granting the new trial. The Appellees' third point of error is overruled.

The judgment of the trial court is **affirmed.**