Avi Bart **MARKOWITZ**, Appellant,

v.

Bridget Mary **MARKOWITZ**, Appellee.

No. 14–00–01505–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 11, 2003.

Rehearing Overruled Oct. 30, 2003.

Margaret H. Meece, Bryan, for appellant.

Allen Segal, Bryan, for appellee.

Panel consists of Justices YATES, FOWLER, and SEYMORE.

## OPINION ON REHEARING

CHARLES W. SEYMORE, Justice.

We withdraw our previous opinion dated April 17, 2003 and substitute this opinion in its place. In six issues, Avi Bart Markowitz appeals the final decree of divorce that dissolved his marriage to Bridget Mary Markowitz and divided their property. We affirm. Accordingly, Avi's motion for rehearing is overruled.

## BACKGROUND

Avi and Bridget Markowitz married in 1983. Avi filed for divorce in 1997 and on December 15, 1997, he presented an agreed decree of divorce to Bridget for her signature. Bridget was scheduled for breast cancer surgery the next day. Despite the impending hospital stay, she signed the decree but initialed it "AMW." Later, she testified that the acronym meant "against my will." On December 18, 1997, while Bridget was hospitalized, the court rendered judgment on the parties' agreement and signed the final decree of divorce. Late that afternoon, Bridget called the trial court from her hospital room, claiming (with her husband's attorney also on the line) that she had been coerced into signing the decree. She subsequently retained an attorney and filed a motion for new trial.

Following the grant of a new trial, the trial court entered temporary orders, providing in part for spousal support and a continued salary for Bridget, who had worked as a nurse in Avi's medical practice. Avi did not comply with the temporary orders timely or willingly. Additionally, as the divorce became more contentious, the trial court found Avi in contempt on three occasions and jailed him twice for failure to comply with the temporary orders. During the course of proceedings, Avi filed three writs of habeas corpus, two or three motions to recuse the judge, and two petitions for writ of mandamus. There were many other pretrial motions, some involving Bridget's own poor behavior. The jury trial spanned seven weeks during October and November 1999. Post-verdict motions and hearings continued in the same vein of non-cooperation and contentiousness between Avi and Bridget. In total, Avi spent more than $300,000 in attorney's fees, and Bridget's attorney dedicated some $70,000 worth of time to the case. The trial court signed a final judgment on September 20, 2000, and this appeal ensued.

## REPORTER'S RECORD

In his first issue, Avi contends that he is entitled to a new trial because the court reporter failed to transcribe and file certain pretrial proceedings, which were recorded electronically. Avi claims that the missing pretrial proceedings would demonstrate he was denied a fair and impartial trial on the merits because of the trial judge's bias. For the reasons set forth in Justice Fowler's opinion, which is the majority opinion on this issue, the court overrules issue one.

## ALLEGED JUDICIAL BIAS

In his second issue, Avi contends he was denied a fair and impartial trial because of judicial bias throughout the proceedings. In seventeen pages of his brief, he complains that three years of rulings, as well as comments made by the trial court and Bridget, evidence the trial court's bias against him.

■■■ Parties have a right to a fair and impartial trial. *Metzger v. Sebek*, 892 S.W.2d 20, 37 (Tex.App.-Houston [1st Dist.] 1994, writ denied). One of the fundamental components of a fair trial is a neutral and detached judge. *Ward v. Village of Monroeville*, 409 U.S. 57, 62, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). A judge should not act as an advocate nor an adversary for any party. *Metzger*, 892 S.W.2d at 38. "To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) probable prejudice to the complaining party." *Id.* at 39.

In *Barrientos v. Nava*, 94 S.W.3d 270 (Tex.App.-Houston [14th Dist.] 2002, no

pet.), this court considered judicial bias when a trustee was appointed. We wrote as follows:

> The scope of our review is the entire record. *Id.* We note that "'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 240 (Tex. 2001) (citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source; however, when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *See Ludlow v. DeBerry,* 959 S.W.2d 265, 271 (Tex.App.-Houston [14th Dist.] 1997, no writ) (citing *Liteky,* 510 U.S. at 554–56, 114 S.Ct. 1147).

*Barrientos v. Nava,* 94 S.W.3d at 291–92. In *Barrientos,* the court concluded that the judge clearly held strong opinions about the proposed trustee, but they were based on the testimony and evidence the judge heard and saw during the trial. As such, they were not grounds for improper bias. With this case law in mind, we now turn to Avi's complaints of judicial bias.

■ First, we consider the trial court's allegedly biased comments. The record reflects various occasions on which the trial court expressed consternation about appellant's conduct. A party must object to a court's improper comment when it occurs in order to preserve error for appellate review. *Dow Chem. Co.,* 46

S.W.3d at 241. Avi did not object to any of the judge's comments during the proceedings in which they were made.[1] Therefore, no error is preserved for our review regarding the trial court's allegedly improper courtroom comments.

■ Next, we consider the allegedly extrajudicial comment reported in a local newspaper article: "Upon sending Markowitz to jail last week, [Judge] Delaney said he was protecting the weak from the strong.... [Judge] Delaney declined to comment Wednesday...." Avi claims the judge's reported comment is an extrajudicial opinion reflecting the judge's bias. Again, this is taken from evidence introduced during a hearing to enforce temporary orders, a transcript **not** made part of the appellate record. We may not consider matters not included in the appellate record. Therefore, no error is preserved for our review regarding this allegedly extrajudicial comment.

■ Last, we consider Avi's claim that the trial court's rulings establish judicial bias against Avi such that he was denied a fair and impartial trial. Only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible. *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147; *see In re M.C.M.,* 57 S.W.3d 27, 33 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (insufficient showing of antagonism in, for example, judge's refusal to permit attorney to read from documents in evidence). Such rulings are generally best brought as grounds for appeal, not as evidence of judicial bias. *See Liteky,* 510 U.S. at 555, 114 S.Ct. 1147; *Grider v. Boston Co.,* 773

---

1. The appellate record does not include transcripts of the pretrial proceedings, particularly the hearings on motions to recuse, and we cannot consider exhibits to Avi's brief as part of the appellate record. *See Till v. Thomas,* 10 S.W.3d 730, 733–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

S.W.2d 338, 346 (Tex.App.-Dallas 1989, writ denied) ("proper remedy was to assign error on the basis of the adverse rulings").

Avi suggests some thirty different rulings reflect the trial court's antagonism toward him. An objecting party, in order to preserve a complaint for appellate review, must get a ruling from the trial court. TEX.R.APP. P. 33.1; *see Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We have examined the trial record, and in many of Avi's examples of biased rulings, the record contains no ruling or request for a ruling. In several other instances, objections to testimony were resolved in Avi's favor. These favorable rulings would indicate that the trial judge was attempting to rule on the merits notwithstanding the antagonistic atmosphere between parties and the court. Finally, after carefully examining the clerk's record and trial record for the remaining examples of allegedly biased rulings, we conclude that the trial judge did not exhibit deep-seated favoritism or antagonism that would make fair judgment impossible. *See Dow Chem. Co.*, 46 S.W.3d at 241. Even considering the cumulative effect of all of the judge's comments and rulings, we cannot conclude that they probably caused the rendition of an improper judgment by either influencing the jury to return a verdict it would not have otherwise returned. Nor has it been shown that they impacted the judge's post-verdict rulings. *See Metzger*, 892 S.W.2d at 39.

Accordingly, we overrule issue two.

## BREACH OF CONTRACT

In his third issue, Avi contends that the trial court erred in granting judgment *non obstante veredicto* (JNOV) on the jury's finding (Issue No. 11) that Bridget failed to comply with her contractual obligations under the Final Decree of Divorce dated December 18, 1997. He further contends the trial court was obligated to incorporate into the final judgment an award of $115,530 found to be his damages resulting from Bridget's breach of contract. Our disposition of this issue turns on the status of the agreement (recited in the 1997 decree) after the trial court granted a new trial.

Here, our discussion is controlled by one fact: the trial court granted a motion for new trial. While a trial court retains plenary power, it has the authority to grant a new trial after rendition of an agreed divorce. *See Nichols v. Nichols*, 907 S.W.2d 6, 9–10 (Tex.App.-Tyler 1995, writ denied). When a motion for new trial is granted, the original judgment is set aside and the parties may proceed without prejudice from previous proceedings. *See In re Marriage of Wilburn*, 18 S.W.3d 837, 844 (Tex.App.-Tyler 2000, pet. denied); *Long John Silver's Inc. v. Martinez*, 850 S.W.2d 773, 777 (Tex.App.-San Antonio 1993, writ dism'd w.o.j.). Granting a new trial has the legal effect of vacating the original judgment and returning the case to the trial docket as though there had been no previous trial or hearing. *See Pinkley v. Vega*, 768 S.W.2d 473, 475 (Tex. App.-El Paso 1989, no writ) (finding that an order granting new trial vacates former judgment in its entirety); *see also Schintz v. Morris*, 13 Tex.Civ.App. 580, 35 S.W. 516, 519 (1896) (noting that a trial court's decision to grant a motion for new trial, thereby setting aside the only judgment that was rendered on the verdict, had "the effect of destroying the life of the verdict for all purposes.").[2]

---

2. This principle is deeply rooted in Texas law. *See City of San Antonio v. Dickman*, 34 Tex. 647, 651 (1870) ("It is believed to be a well-settled principle, that the granting a new trial

Avi contends the trial court's decision to grant a new trial did not alter the parties' contractual division of assets and liabilities. Avi relies on the Texas Supreme Court's acknowledgment that "[a]n agreed judgment should be construed in the same manner as a contract." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000); *accord McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984); *Cavazos v. Cavazos*, 941 S.W.2d 211, 214 (Tex.App.-Corpus Christi 1996, writ denied). He also argues that an agreed judgment may stand as a contract even if it falls as an adjudication. *Mackey v. Mackey*, 721 S.W.2d 575, 579 (Tex.App.-Corpus Christi 1986, no writ); *accord Reagan County Purchasing Co. v. State*, 65 S.W.2d 353, 358 (Tex.Civ.App.-Austin 1933, no writ). However, under section 7.006 of the Family Code, the trial court in a divorce proceeding has discretion to approve or reject such agreements in order to ensure a just and right division of the marital estate. Section 7.006 provides:

(a) To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.

(b) If the court finds that the terms of the written agreement in a divorce or annulment are just and right, those terms are binding on the court. If the court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree.

(c) If the court finds that the terms of the written agreement in a divorce or annulment are not just and right, the court may request the spouses to submit a revised agreement or may set the case for a contested hearing.

TEX. FAM.CODE ANN. § 7.006 (Vernon 1998).

The Texas Legislature has mandated the trial court's exercise of special responsibilities regarding the division of assets and liabilities upon dissolution of the matrimonial bond. Texas law requires a finding by the trial court that the terms of a written agreement for the division of assets and liabilities are just and right. *Id.* § 7.006(b). By vacating the original judgment, the trial court clearly withdrew its approval of the terms in the agreement. Additionally, in its Findings of Fact and Conclusions of Law, the trial court concluded that the terms of the agreement were not just and right. Thus, without approval from the trial court, there was no longer a written agreement capable of being enforced.[3]

in a cause is to reinstate it on the docket as though no trial had been had....."); *Wolf v. Sahm*, 135 S.W. 733, 734 (Tex.Civ.App.1911) ("It is needless to remark that the effect of granting a new trial is to vacate the judgment rendered on the prior one.").

3. We acknowledge that the following language is included in subsection (a): "the agreement may be revised or repudiated before rendition ... *unless the agreement is binding under another rule of law.*" This language might imply that the trial court is bound by the agreement after rendition; however, we do not believe the legislature intended to impede the trial court from placing the parties and the court in *status quo ante* by granting a new trial. This interpretation ensures that the trial court will retain statutory authority to determine a just and right division of the marital estate when a new trial is granted. Accordingly, litigants may either draft another agreement or proceed to trial. Here, the trial court observed in its Findings of Fact and Conclusions of Law that any contractual obligations arising from the de-

In considering whether the agreement in this case is "binding under another rule of law," we are mindful of the line of cases establishing the enforceability of a Rule 11 agreement before or after rendition of a final decree. *See* TEX.R. CIV. P. 11 (in writing, signed by the parties, and filed with the papers as part of the record). However, we believe any cases on this issue that are outside of the family law context do not control.

 A Rule 11 agreement is a contract, governed by contract law. *In re Marriage of Nolder*, 48 S.W.3d 432, 434 (Tex.App.-Texarkana 2001, no pet.); *see Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex.1995). We acknowledge that agreements incident to divorce become enforceable contracts when they are incorporated into a final decree. *Traylor v. Traylor*, 789 S.W.2d 701, 703 (Tex.App.-Texarkana 1990, no writ). We further acknowledge that agreements under Alternative Dispute Resolution Procedures are enforceable in the same manner as any other written contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.071(a) (Vernon 1997). However, we do not believe our application of section 7.006 of the Family Code in the instant case conflicts with these settled principles. *See In re Marriage of Ames*, 860 S.W.2d 590, 592 (Tex.App.-Amarillo 1993, no writ) (finding no conflict between section 154.071 and Family Code section 3.631(a) (the predecessor to section 7.006)). Our decision properly ensures that the trial court will retain statutory authority to determine a just and right division of the marital estate as required by section 7.006. After a new trial is granted, the court should have an opportunity to either accept or reject the agreement. *See Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex.App.-El Paso 1997, no writ) (acknowledging that the trial court should have an opportunity

to set aside an agreement after rendition of a judgment in order to consider an intervention).

Accordingly, we hold that any contractual obligation arising from the decree was extinguished when the trial court concluded that it was not "just and right." Avi's third issue is overruled.

### FRAUD ON THE COMMUNITY

 In his fourth issue, Avi contends the trial court erred in failing to award him a share of community assets lost through Bridget's fraud. The jury found that Bridget committed fraud on the community in the amount of $67,800. The trial court held that the jury's answer was advisory and that wrongful disposition of community assets is merely a factor to be considered in the property division. "Because a wronged spouse has an adequate remedy for fraud on the community through the 'just and right' property division upon divorce, . . . there is no independent tort cause of action between spouses for damages to the community estate." *Schlueter v. Schlueter*, 975 S.W.2d 584, 585 (Tex.1998). "Texas recognizes the concept of fraud on the community, which is a wrong by one spouse that the court *may* consider in its division of the estate of the parties and that *may* justify an unequal division of the property." *Id.* at 588 (emphasis added).

 A trial court has wide discretion in dividing the community estate. *Wright v. Wright*, 65 S.W.3d 715, 716 (Tex. App.-Eastland 2001, no pet.). It may consider fault in the divorce, the spouses' capacities and abilities, benefits that a party not at fault would have derived from continuation of the marriage, business opportunities, education, physical condition of

cree were extinguished when the new trial was granted.

the parties, age disparity, business opportunities, education, size of separate estates, the nature of the property, and waste of community assets. *Schlueter,* 975 S.W.2d at 589; *see Wright,* 65 S.W.3d at 717. On appeal, we presume that the trial court properly exercised its discretion, and we may not disturb the property division absent a clear abuse of discretion. *Wright,* 65 S.W.3d at 717.

The record reflects that the trial court considered Bridget's earning capacity, income, educational level, and the benefits she would have received had the marriage continued. The trial court also considered Avi's excessive personal expenditures during the pendency of the divorce and his refusal to abide by temporary orders (which resulted in protracted enforcement litigation) as actions that reduced the community assets available for division. Lastly, the trial court considered the jury's award of two dollars for Bridget's intentional infliction of emotional distress, the finding that Bridget fraudulently transferred assets, and the finding that neither party had unfairly expended community property without the other's knowledge or consent. In total, the record does not reflect abuse of discretion in the division of the community estate. Therefore, we overrule issue four.

## VALUATION

In his fifth issue, Avi contends that the trial court should have granted JNOV on the jury's valuation of his medical practice because there is no evidence that it was worth $321,000. As a subissue, he also argues that the trial court erred in allowing Bridget to testify about the value of the medical practice because she was not designated to testify on that subject.

A no-evidence point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; or (3) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). In determining a no-evidence issue, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

At trial, a certified public accountant testified that the value of the medical practice was $221,000, not including attorney's fees paid by Avi from medical practice accounts. Additionally, the evidence showed that Avi paid his attorneys over $100,000 from the medical practice for the divorce. The medical practice's usual accountant testified that such attorney's fees are not business-related deductions. Further, the evidence showed that this accountant labeled such non-business deductions as "due from shareholder." Given these two amounts, the $221,000 valuation plus in excess of $100,000 in attorney's fees due the medical practice from Avi, there is more than a scintilla of evidence to support the jury's valuation of $321,000 for the medical practice. *See Rathmell v. Morrison,* 732 S.W.2d 6, 19 (Tex.App.-Houston [14th Dist.] 1987, no writ).

Having found sufficient evidence to support the jury's valuation of the medical practice, we need not address whether it was error to allow Bridget to testify about the value. We overrule issue five.

## ATTORNEY'S FEES

In his sixth issue, Avi contends that the trial court should have granted

JNOV because there is no evidence to support the jury's award of zero in attorney's fees for Avi's successful appeals to the court of appeals and the Texas Supreme Court. He asks us to render judgment of $50,000 for a successful appeal in this court and $20,000 in the event of a successful appeal before the Texas Supreme Court.

However, determination of this issue has no effect on the judgment. "A party has no statutory right to attorney's fees in a divorce case which does not involve a child custody determination." *Beard v. Beard,* 49 S.W.3d 40, 64 (Tex. App.-Waco 2001, pet. denied). A trial court *may* award attorney's fees as a part of the division of the parties' marital estate. *Pletcher v. Goetz,* 9 S.W.3d 442, 448 (Tex.App.-Fort Worth 1999, pet. denied). In this case, the trial court specifically ordered in the final judgment that both sides should bear their own attorney's fees. Avi does not assign error to this portion of the judgment. Thus, it is a moot question whether the trial court should have granted JNOV on the jury's valuation of appellate attorney's fees. We are constrained to address issues in which an actual controversy exists. *See Speer v. Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 228 (Tex.1993). Further, under the rules of appellate procedure, no judgment may be reversed on the ground that the trial court committed an error of law unless the error probably caused rendition of an improper judgment. TEX.R.APP. P. 44.1(a). Accordingly, we do not address Avi's sixth issue.

### CONCLUSION

We have overruled issues one through five, and issue six is rendered moot. Accordingly, the judgment of the trial court is affirmed.

SEYMORE and FOWLER, J.J. concurring.

CHARLES W. SEYMORE, Justice, concurring.

I concur with the majority's disposition of Avi's first issue regarding the missing pretrial reporter's record. However, I would hold that Avi also failed to meet the second and third requisites of Texas Rule of Appellate Procedure 34.6(f). When a reporter's record is lost or destroyed, a party is entitled to a new trial if four requirements are met. TEX.R.APP. P. 34.6(f)(1)–(4). First, the appellant must timely request a record. *Id.* Second, for proceedings electronically recorded, a significant portion of the recording must be lost, destroyed, or inaudible through no fault of the appellant. *Id.* Third, the lost or destroyed portion must be necessary to the appeal's resolution. *Id.* Fourth, the parties must be unable to agree on a complete reporter's record. *Id.*

Most significantly, Avi fails to show that the record of pretrial proceedings is "necessary to the appeal's resolution." *Id.; see Young v. Neatherlin,* 102 S.W.3d 415, 423 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (appellant failed to demonstrate that missing portion of record was necessary to resolution of the appeal); *Palmer v. Espey Huston & Assoc., Inc.,* 84 S.W.3d 345, 351–52 (Tex.App.-Corpus Christi 2002, pet denied). In pretrial proceedings, the trial court addressed temporary orders, enforcement of those orders, and discovery disputes. Avi's issue on appeal is whether he received a fair and impartial *trial on the merits,* not error in the pretrial proceedings. I believe that the reporter's record of pretrial proceedings is not absolutely necessary to determine whether appellant received a fair and impartial trial on the merits. As the court addressed in the opinion on rehearing, we examined the trial record and found Avi was not denied a fair or impartial trial on the merits.

Further, Avi has not completely fulfilled the second requirement of Rule 34.6(f). He must show that the pretrial record is lost, destroyed, or inaudible. TEX.R.APP. P. 34.6(f)(2). Avi admits in his brief that he "is unaware of whether these recordings and their log notes have been lost or destroyed." Lastly, I agree with the majority that Avi failed to show that "the parties cannot agree on a complete reporter's record." TEX.R.APP. P. 34.6(f)(4).

I would hold that Avi has failed to fulfill three requisites of Rule 34.6(f). Accordingly, Avi is not entitled to a new trial because of the reporter's failure to file the record of pretrial proceedings.

WANDA McKEE FOWLER, Justice, concurring.

We join the majority opinion in all respects except for its discussion of the first issue. **On the first issue only, this is the majority opinion.**

### REPORTER'S RECORD

In his first issue, Avi contends that he is entitled to a new trial because the court reporter failed to transcribe and file certain pretrial proceedings, which were recorded electronically. We disagree.

Avi claims that the missing pretrial proceedings would demonstrate he was denied a fair and impartial trial on the merits because of the trial judge's bias.[1] An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; *and*

(4) if the parties cannot agree on a complete reporter's record.

TEX.R.APP. P. 34.6(f) (Vernon Special Pamph.2002) (emphasis supplied); *Routier v. State*, 112 S.W.3d 554, 570–71 (Tex. Crim.App.2003); *Issac v. State*, 989 S.W.2d 754, 756–57 (Tex.Crim.App.1999) (en banc).[2] We find that Avi has not complied with the fourth requirement, showing that the parties could not agree on a complete reporter's record. *See* TEX.R.APP. P. 34.6(f)(4). This failure on his part is dispositive of this issue.

---

1. Avi provided transcripts of three pretrial hearings and two recusal hearings as exhibits to his brief. However, we cannot consider these exhibits as part of the appellate record. *See* TEX.R.APP. P. 34.1, 34.5, 34.6 (contents of appellate record); *Till v. Thomas*, 10 S.W.3d 730, 733–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see also Gabriel v. State*, 973 S.W.2d 715, 719 (Tex.App.-Waco 1998, no pet.) (letter attached to appellate brief not part of the record). We note that in the two recusal motions included in the record, Avi complained about alleged bias shown in the trial court's pretrial comments and rulings. Both motions to recuse were denied. Avi does not assign error to the denial of his motions to recuse.

2. This appeal was perfected before the Texas Rules of Appellate Procedure were amended, effective January 1, 2003. Rule 34.6(f) was amended to clarify its application to exhibits and require agreement only as to the portion of the text at issue and to provide that the trial court may determine that a copy of an exhibit should be used even if the parties cannot agree. *See* TEX.R.APP. P. 34.6 comments; *compare* TEX.R.APP. P. 34.6(f) (Vernon Special Pamph.2002) *with* TEX.R.APP. P. 34.6(f) (Vernon 2003).

We can find no reference in any document submitted by Avi that he has fulfilled this requirement. *See Kirtley v. State,* 56 S.W.3d 48, 52 (Tex.Crim.App.2001) (holding that a new trial could not be ordered until there was a finding the parties could not agree on complete reporter's record). More importantly, Avi fails to direct us to any part of the voluminous record which shows the parties could not agree on replacements for the lost transcripts of the pretrial proceedings. *See Nguyen v. Kosnoski,* 93 S.W.3d 186, 188 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (finding that an issue unsupported by record reference is waived). In addition, our order of November 11, 2001 granted Avi time to file his brief thirty days after the reporter's record was filed, because he had so many problems in locating and transcribing the record. Nonetheless, the appellant's brief was filed on January 14, 2002, and Avi asked that he be entitled to supplement his brief when the trial court reporter filed additional record transcripts. Although it is now more than a year later, our clerk's office has received no additional transcripts and no agreement, or attempts to agree, on the apparently lost record. The rules of appellate procedure and the case law detail the steps a litigant must take if confronted with a lost record. *See* Tex. R.App. P. 34.6(f); *see also Routier v. State,* 112 S.W.3d at 557–58 (appeals court had granted motion to correct and clarify the record and remanded case for a trial court hearing); *Gaston v. State,* 63 S.W.3d 893, 899 (Tex.App.-Dallas 2001, no pet.) (trial court made findings of fact); *Doubrava v. State,* 28 S.W.3d 148, 151 (Tex.App.-Eastland 2000, pet. ref'd) (trial court filed conclusion of law after hearing on remand); *Pierre v. State,* 2 S.W.3d 439, 444 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (judicial findings of fact issued after case abated and remanded). Avi failed to follow these guides and, as a result, he has waived his right to complain of any harm the lost record may have on his appeal.

Accordingly, because Rule 34.6(f) has not been satisfied, Avi is not entitled to a new trial due to a lost, destroyed or unfiled reporter's record of the pretrial proceedings. The first issue is overruled.

YATES, J., joins this opinion on the first issue.