**Affirmed and Memorandum Opinion filed September 10, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00395-CV

## CRAIG WILTFANG, Appellant

## V.

## NAEGELI TRANSPORTATION, INC. AND BENNIE RAY VALDEZ, Appellees

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2016-00705

## M E M O R A N D U M   O P I N I O N

In this personal injury case, appellant Craig Wiltfang appeals a take-nothing judgment, which was based on a jury verdict rejecting his claim against appellees Naegeli Transportation, Inc. and Bennie Ray Valdez. In three issues, he contends that the trial judge engaged in judicial impropriety during the trial, which prejudiced Wiltfang and resulted in an improper judgment. Because we conclude that the trial judge did not engage in any impropriety, we affirm.

## Background

Wiltfang sued Naegeli Transportation and Valdez for personal injuries allegedly caused in a motor-vehicle accident. Wiltfang asserted a negligence cause of action and alleged that Valdez backed up his vehicle into Wiltfang's vehicle, causing Wiltfang severe injuries. Wiltfang also alleged that Naegeli Transportation, Valdez's employer, was liable for Valdez's negligence under the doctrine of respondeat superior.

Initially, Wiltfang was represented by counsel, but he represented himself at trial. During his opening statement, Wiltfang told the jury that he was on his motorcycle behind a large semi-truck on a two-lane road in Willis. The truck missed its turn into a construction zone and, after stopping briefly, reversed and began backing up. Wiltfang tried to move out of the way but was unable to move his motorcycle quickly enough. A low bar on the back of the truck impacted his motorcycle, "mangling" the bike. Wiltfang "went under the truck" and "[g]ot knocked over by a couple of steel bars." According to Wiltfang, he also did a "backflip" over the low bar.

After opening statements, Wiltfang took the witness stand and was permitted to provide narrative testimony. Our review of the reporter's record shows that Wiltfang began by explaining that he had an attorney, but "it didn't work out" because "the attorney took too long . . . things just horribly went wrong." According to Wiltfang, he did not want to go to the emergency room after the accident, but "the ambulance driver" talked him into it. Further, "the emergency room did not find a fracture" and told him he was "okay." Wiltfang then described a multi-state motorcycle trip he went on a few weeks after the accident. During this trip, he slipped on some gravel, "tried to pull on the bike," and "[s]nap, loud, out the middle of Wyoming on the side of the road with a busted back." To Wiltfang, this back

2

injury was "not just a coincidence." When Wiltfang attempted to testify concerning purported "traumatic hairline fractures," defense counsel objected that he lacked the expertise to testify about that matter. Wiltfang agreed and did not testify further about it. He changed topics to other alleged injuries, including a shoulder/rotator cuff injury, but he did not clarify when the injuries occurred. Wiltfang said he received physical therapy, but again, it is difficult to discern from his testimony when the therapy occurred. He described various sports he used to enjoy but no longer could undertake because of his back injury. He testified that he had six "broken backs" and seven surgeries. Wiltfang finished his testimony by describing his employment history.

Wiltfang offered little, if any, testimony regarding how the accident occurred or what he contended caused it. During his testimony, Wiltfang did not mention Valdez's name at all, nor did he reference Naegeli Transportation. Wiltfang's narrative frequently rambled from one marginally relevant subject to another, making his testimony difficult to follow, despite the trial court urging him to try to stay on point for the jury's benefit. When Wiltfang finished, the trial court asked him if he had any more witnesses, and he replied, "No, sir."

The trial court then addressed defense counsel and the following exchange occurred:

THE COURT: Do you have any witnesses you wish to call?

[Defense Counsel]: Yes, Your Honor. I would call my client Bennie Valdez.

THE COURT: Are you sure?

[Defense Counsel]: May I have an opportunity to discuss this with my client?

THE COURT: Yes.

[Defense Counsel]: Thank you.

3

THE COURT:  You want to step outside for 30 seconds.  You may.

***

[Defense Counsel]:  Your Honor, I do not have any witnesses and we would rest on behalf of the Defense.

Wiltfang's appellate issues all arise from the court's question above—"Are you sure?"—when defense counsel proposed to call Valdez.  After the defense rested without calling any witnesses, the trial court gave Wiltfang the opportunity to present more evidence.  Wiltfang attempted to present a letter from his "pain doctor," but defense counsel objected on hearsay grounds.  Wiltfang seemed to acknowledge that the letter was hearsay and did not press the matter further.  He stated he had nothing else to offer, and he thanked the jurors for their time.

At the bench and outside the hearing of the jury, defense counsel moved for a directed verdict on Wiltfang's liability and damage claims.  The court asked Wiltfang if he had a response to the motion, and Wiltfang responded, "It sounds good," to which the court replied, "No, you don't want that."  The court then granted a partial directed verdict on Wiltfang's respondeat superior claim as to Naegeli Transportation and Wiltfang's damages for past and future wages, disfigurement, and medical expenses.  However, the court denied the motion on Wiltfang's negligence claim against Valdez individually for damages for past and future physical pain, emotional suffering, and mental anguish.

The jury found that Valdez's negligence, if any, did not proximately cause the occurrence in question.  The jury did not answer the damages question.  The trial court signed a final take-nothing judgment in Valdez's and Naegeli Transportation's favor.

Wiltfang, still representing himself, timely filed a motion for new trial.  Wiltfang subsequently retained counsel, who timely filed a supplemental motion for

4

new trial on the thirtieth day after the judgment was signed.[1]  In the supplemental motion for new trial, Wiltfang complained for the first time about the trial court's question to defense counsel about whether she was "sure" she wanted to call her client to testify, quoted above.  Wiltfang argued that the trial court "erred in commenting to defense counsel on how to proceed in the presentation of her case," thus "tak[ing] away any opportunity that the Plaintiff would have had by cross examination to elicit favorable testimony concerning the Defendant's negligence."

Naegeli Transportation and Valdez filed a response, urging that the evidence supported the jury's no-negligence finding.  Additionally, they argued that the trial court's question did not influence the jury or prejudice Wiltfang's presentation of his case, nor did the trial court instruct defense counsel not to call Valdez to the stand.  They noted that:  (1) Wiltfang was given "great latitude" in the presentation of his case; (2) he had "every opportunity to testify to the jury about the facts surrounding the accident"; (3) Valdez was present in the courtroom during the entire trial, yet Wiltfang did not call him to testify; and (4) after the defense rested without calling Valdez, the trial court gave Wiltfang the opportunity to present additional evidence, but Wiltfang still did not call Valdez or present further evidence.

During the hearing on Wiltfang's motion for new trial, his counsel argued that a new trial was warranted because:

> [m]y thought on that, Judge, is inadvertently the opportunity for Mr. Wiltfang, who was a pro se Plaintiff, to perhaps by some lucky question, elicit testimony from Mr. Valdez had he been called to the witness stand on negligence, then the case might have turned out differently.  And that's the argument in a nutshell.

---

[1] Wiltfang's counsel also filed a second supplemental motion for new trial outside the thirty-day deadline for filing such a motion.  *See* Tex. R. Civ. P. 329b(a), (b).  Therefore, we do not consider it.

Wiltfang's counsel, however, expressly stated that the trial court did not act with any "impropriety" and that the judge's question to defense counsel instead "was an inadvertent comment made that influenced the outcome of the trial, possibly." In response, defense counsel reminded the court that Wiltfang had numerous chances to call Valdez as a witness during trial, including an opportunity after the defense rested.

The trial court orally denied Wiltfang's motion for new trial, explaining that Wiltfang had ample opportunity to testify about the accident and the negligence of the defendant yet only "touched on it in maybe a sentence or two but did not elaborate at all," even after mentioning his version of the facts in his opening statement. The court observed that Wiltfang had plenty of time before trial to either educate himself or find an attorney. Further, the court stated that nothing occurring during trial merited a second trial. The trial court signed an order denying the motion that same day.

Wiltfang timely appealed.

**Analysis**

Wiltfang presents the following three intertwined issues for review:

1.   Did the trial court commit reversible error during trial through violation of the judicial principle of avoiding the appearance of impropriety when it asked defense counsel if she was sure she wanted to put her Defendant on the witness stand after the *pro se* Plaintiff had rested his case?

2.   Did the trial court commit reversible error because its question to defense counsel caused prejudice to Plaintiff's case?

3.   Did the trial court commit reversible error because the prejudice caused by its question to defense counsel resulted in an improper verdict being rendered against Plaintiff?

6

These three issues present variations on the same theme: whether the trial court's question to defense counsel was improper and prejudiced Wiltfang.

## A. Applicable Law and Standard of Review

Parties have a right to a fair and impartial trial, including a neutral and detached judge. *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Thus, a judge "should not act as an advocate nor an adversary for any party." *Id.* However, a trial judge has broad discretion to express himself or herself during a proceeding. *McNatt v. J.D. Hopkins Grp. LLC*, No. 14-11-00649-CV, 2012 WL 3133871, at *3 (Tex. App.—Houston [14th Dist.] Aug. 2, 2012, no pet.) (mem. op.). Thus, a trial judge "may intervene to maintain control in the courtroom, to expedite the trial, or even to prevent what it considers to be a waste of time." *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001) (per curiam)).

"To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) probable prejudice to the complaining party." *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986); *Kroger Co. v. Milanes*, 474 S.W.3d 321, 344 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *McNatt*, 2012 WL 3133871, at *3; *Markowitz*, 118 S.W.3d at 86. If we determine that the trial judge acted improperly, we must examine the entire record to determine whether the impropriety resulted in harm. *McNatt*, 2012 WL 3133871, at *3; *see Barrientos v. Nava*, 94 S.W.3d 270, 292 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Metzger*, 892 S.W.2d at 39).

We review a trial court's ruling on a motion for new trial for an abuse of discretion.[2] *Wagley v. Neighborhood Ins. Specialists*, No. 14-16-00859-CV, 2018 WL 2139196, at \*7 (Tex. App.—Houston [14th Dist.] May 10, 2018, no pet.) (mem. op.). However, we generally do not defer to the trial court on questions of law, such as the first part of our inquiry here—whether the trial court's question to defense counsel was improper. *See Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("The abuse of discretion standard of review means different things in different contexts. In general, we do not defer to the trial court on questions of law, and we defer to a trial court's factual findings if they are supported by evidence.").

## B. Wiltfang Has Not Demonstrated Judicial Impropriety

First, appellees contend that Wiltfang did not preserve his complaint for our review because he did not object when the trial court asked the question at issue. *See* Tex. R. App. P. 33.1(a); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 351 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (complaint about judge's improper ex parte communication was not preserved because appellant did not object). Wiltfang argues that "the judicial error committed in this case is not one that could have been cured by an admonitory instruction." *See Francis*, 46 S.W.3d at 241 (party must object to trial court's improper conduct or comment to preserve complaint for appellate review, "unless the conduct or comment cannot be rendered harmless by proper instruction"). Wiltfang claims that objecting to the trial court's comment when it occurred would not have cured the harm because any instruction to disregard likely would not have resulted in defense counsel calling Valdez to

---

[2] We construe Wiltfang's appellate points liberally to include a challenge to the trial court's failure to grant a new trial.

testify.  Though, as the court noted, nothing prevented Wiltfang from calling Valdez in his case-in-chief.

Presuming without deciding that Wiltfang preserved his complaint by raising it in his supplemental motion for new trial, Wiltfang has not shown that the judge's question exhibited bias or impropriety.  First, our record does not reflect the motivation behind the judge's question.  As appellees argue, the trial court may have asked the question for any number of proper reasons, including because defense counsel seemed hesitant in some way or in an effort to expedite the case and prevent a waste of time.  *See id.* ("[A] trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time.").  The record supports appellees' point that the trial judge was attempting to keep the trial on schedule for valid administrative reasons.  *E.g.*, *id.*; *Hoggett v. Brown*, 971 S.W.2d 472, 495-96 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("The judge may properly intervene in the proceedings to maintain control and promote expedition.").  This single question from the court simply does not show that he acted as an advocate or an adversary for any party.  *See Markowitz*, 118 S.W.3d at 86; *see also Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *8 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.) ("The record does not show that the trial judge in effect represented Kang while simultaneously acting as the judge in Song's and Kang's dispute.").

Because the judge's question to defense counsel was not improper, the trial court did not abuse its discretion in denying Wiltfang's motion for new trial.  We

overrule Wiltfang's first issue and need not reach his second and third issues regarding prejudice.

We affirm the judgment.

/s/ Kevin Jewell
   Justice

Panel consists of Justices Christopher, Jewell, and Hassan.