Affirmed and Opinion filed July 31, 2007








Affirmed and Opinion filed July 31, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00182-CR

____________

 

HARVEY JOSEPH DOCKSTADER, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1032644

 



 

O P I N I O N

A jury convicted appellant Harvey Joseph Dockstader, Jr. of
promoting a pyramid promotional scheme and assessed punishment at two years= incarceration in
the Texas Department of Criminal Justice, State Jail Division, and a $10,000
fine.  Appellant raises nine issues on appeal.  We affirm.

Factual and Procedural Background








Appellant is the founder of an organization known as Elite
Activity.  Since 2001, Elite Activity has maintained an internet website where
people are invited to participate in a Acycle of abundance@ through the
giving and receiving of monetary Agifts.@  Participation in
Elite Activity is based on the payment of money, the receipt of money, and the
recruitment of new members.  No products or services are sold.  For a monthly
fee, participants in Elite Activity may subscribe to the organization=s internet service
and track their progression through pyramid-shaped Apanels@ of Agifting.@  Appellant
traveled to numerous churches across the southern United States to speak about
Elite Activity, which he claims is inspired by God and based on the teachings
of the Bible.  

On June 24, 2005, in response to the arrest of one of Elite
Activity=s participants,
appellant held a press conference on the front steps of the Harris County
Criminal Justice Center.  In his statement to the media, appellant repeatedly
invited people to participate in Elite Activity.  A videotaped excerpt of appellant=s statement was
broadcast on the Channel 39 evening news in Houston.  On July 1, 2005, a Harris
County grand jury indicted appellant.  The indictment alleged that Aon or about June
24, 2005, [appellant] did then and there unlawfully, intentionally and
knowingly contrive, prepare, establish, operate, advertise, sell, and/or
promote a pyramid promotional scheme.@  Appellant was
convicted and sentenced to the maximum punishment allowed by law.  This appeal
followed.

In nine issues, appellant challenges the constitutionality
of the pyramid promotional scheme statute, the legal and factual sufficiency of
the evidence, the trial court=s refusal to include a proposed mistake of
fact defense instruction in the jury charge, and the conduct of the trial judge
which appellant claims denied him his right to a fair and impartial trial. 

Discussion

I.        Appellant
Failed to Preserve His Constitutional Challenges to the Pyramid Promotional
Scheme Statute








In his first, fourth, fifth, and sixth issues, appellant
argues that section 17.461 of the Texas Business and Commerce Code (Athe pyramid
promotional scheme statute@) is unconstitutional as applied to
appellant.  Appellant contends the pyramid promotional scheme statute violates
his rights to free speech, free association, and free exercise of religion,
pursuant to the United States and Texas Constitutions.  See U.S. Const. Amend. I; Tex. Const. art. I, '' 6, 8, 19, 27.  

A party may challenge a statute on the grounds that it is
facially unconstitutional or unconstitutional Aas applied@ to the party.  Curry
v. State, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (en banc); Briggs
v. State, 789 S.W.2d 918, 923B24 (Tex. Crim.
App. 1990).  In order to review an attack on the constitutionality of a statute
as applied, the party challenging the statute must have raised the issue in the
trial court.  Tex. R. App. P. 33.1(a); Curry, 910 S.W.2d at 496; King
v. State, 174 S.W.3d 796, 815 (Tex. App.CCorpus Christi
2005, pet. ref=d).  Appellant=s first, fourth,
fifth, and sixth issues challenge the constitutionality of the pyramid
promotional scheme statute Aas construed and applied to appellant.@  Our review of
the record shows that appellant did not object to the constitutionality of the
statute at trial.  Appellant argued to the jury that his conduct was justified
by his religious beliefs.  However, he did not move to quash the indictment or
present his constitutional arguments to the court, and he did not request a
ruling that the statute was unconstitutional.  Because no specific, timely
objection was made, appellant=s challenges to the constitutionality of
the pyramid promotional scheme statute as applied to appellant were not
preserved for our review.  See Tex. R. App. P. 33.1; Curry, 910
S.W.2d at 496; King, 174 S.W.3d at 815.  Additionally, appellant=s brief contains
no arguments in support of his fifth and sixth issues and thus presents nothing
for our review.  See Tex. R. App. P. 38.1(h) (An appellant=s brief Amust contain a
clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record.@).  Appellant=s first, fourth,
fifth, and sixth issues are overruled.

II.       The
Evidence is Legally and Factually Sufficient to Sustain Appellant=s Conviction








In his seventh issue, appellant argues the evidence is
factually insufficient to support his conviction.  Appellant=s eighth issue
challenges the legal sufficiency of the evidence, and his second issue contends
the trial court erred in denying his motion for instructed verdict.  Because a
complaint about the denial of a motion for instructed verdict is an attack upon
the legal sufficiency of the evidence, we address appellant=s second and
eighth issues together.  McDuff v. State, 939 S.W.2d 607, 613 (Tex.
Crim. App. 1997); Myles
v. State, 946 S.W.2d
630, 636 (Tex. App.CHouston [14th Dist.] 1997, no pet.).   

A. Standards of Review

            In a legal sufficiency
review, we view all the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Salinas v.
State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the sole
judge of the credibility of the witnesses, is free to believe or disbelieve all
or part of a witness=s testimony.  Jones v. State, 984 S.W.2d 254, 257
(Tex. Crim. App. 1998).  We do not engage in a second evaluation of the weight
and credibility of the evidence, but only ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris
v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  In conducting a factual sufficiency review, we
must employ appropriate deference so that we do not substitute our judgment for
that of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).  Our analysis must consider the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 








B. Analysis

Under the pyramid promotional scheme statute, a person
commits an offense if the person contrives, prepares, establishes, operates,
advertises, sells, or promotes a pyramid promotional scheme.  Tex. Bus. &
Com. Code Ann. ' 17.461(c).  APyramid
promotional scheme@ means a plan or operation by which a
person gives consideration for the opportunity to receive compensation that is
derived primarily from a person=s introduction of other persons to
participate in the plan or operation rather than the sale of a product by a
person introduced into the plan or operation. Id. ' 17.461(a)(6).  ACompensation@ means payment of
money, a financial benefit, or another thing of value. Id. ' 17.461(a)(1). 
The term does not include payment based on the sale of a product to a person,
including a participant, who purchases the product for actual use or
consumption. Id.  AProduct@ means a good, a
service, or intangible property of any kind. Id. ' 17.461(a)(4).   

1. Elite Activity is a Pyramid Promotional Scheme








We first consider whether the evidence is legally and
factually sufficient to support the jury=s finding that
Elite Activity is a pyramid promotional scheme.  Pastor Sean Riley of the
Secret Place International Church testified he became involved with Elite
Activity after watching a D.V.D. given to him by another pastor.  Riley
testified appellant came to Secret Place Church and introduced himself as the
founder of Elite Activity.  Riley began promoting Elite Activity and was
arrested and charged with promoting a pyramid promotional scheme.  At appellant=s trial, Riley
testified about the structure and purpose of Elite Activity.  Riley testified
new members of Elite Activity were invited to give a $100 Agift@ to the senior
member of a Apanel@ or Aboard@ to begin their
participation.  A panel consisted of fifteen participants: eight Afreshman,@ four Asophomores,@ two Ajuniors,@ and one Asenior.@  An individual
became a freshman by contributing $100 to the senior member of the panel. 
Elevation in status could be obtained only by recruiting additional people to
participate.  Recruiting two new people Apushed@ the freshman
invitee to the level of sophomore.  To move from sophomore to junior, each of
the two people recruited by the invitee had to recruit two more people.  After
becoming a senior, the invitee received the $800 in gifts paid by the freshman
members of the panel.  The invitee then restarted as a freshman on a different
panel by making a new gift and recruiting new members.  The amount of the gift
required for participation increased as an invitee progressed from one panel to
the next.  Elite Activity panels required gifts ranging from $100 to $6,000.  

Riley testified participation in Elite Activity was strictly
an exchange of money and did not involve the sale of any product or service. 
Riley further testified, Aif I come into Elite Activity and give a
hundred dollars, I cannot move through the activity unless I go get two
people.  I have to go get two people to do what I did.  I can=t just give it to
you and then expect something in return if I do nothing. . . . that=s how it works.@  Riley testified
he did not know anyone who participated in Elite Activity without expecting to
receive payment in return for their participation.  

Russell Turbeville, the chief of the Consumer Fraud
Division of the Harris County District Attorney=s Office,
testified as an expert on pyramid promotional schemes.  Turbeville described
Elite Activity as a typical Adoubling@ pyramid scheme in
which each participant is required to recruit two new participants in order to
receive compensation.  Turbeville testified perpetrators of pyramid schemes
frequently describe their activity as Agifting.@  Turbeville
further testified participants in Elite Activity were required to pay $100 and Awere encouraged to
recruit at least two people who in turn would pay and recruit other people and
. . . you would eventually receive an $800 payment.@  Participants
then had the option of reentering the scheme by Apaying $250 into
the chart that had a larger payoff and you could progress through a series of
charts and possibly receive as much as $82,000.@  Participants in
Elite Activity were also required to pay a monthly fee in order to track their
participation on the Elite Activity website.  








Appellant testified that the Elite Activity website
provides an accurate description of how Elite Activity works.  State=s Exhibit 6
consists of printed pages of information from the Elite Activity website, which
provide that Athe goal@ of participation
in Elite Activity is Ato qualify for receiving gifts.@  The website
provides that participation begins by entering the AHead Start@ panel Awith your $100
gift and your two invitees ready to accept your invitation.  You are now
qualified to become a senior and start receiving gifts on that panel.  You will
need to have at least two invitees accept your invitation before you move to a
forward panel.@  Participants progress through seven categories of
panels, each of which requires a greater monetary gift.[1] 
When a participant becomes the senior member of a panel, he receives payment
from each of the panel=s eight freshman members.  The website
makes it clear that gifts are Anot given in exchange for a product or
service.@[2]

Appellant testified in his own defense and gave the
following description of Elite Activity: AWhen a participant
chooses to participate, they give a gift.  They start at the giving designation
. . . .They progress from the giving designation down to the receiving
designation and then they have the potential to receive eight gifts, period.@  Appellant
further testified that Elite Activity would continue to exist without the
recruitment of new members  because the existing participants would Acontinually give
and receive.@  However, on cross-examination appellant testified
that Anew participants
coming in helps the activity grow.@  Appellant
further testified Elite Activity formerly had more than 250,000 participants,
and currently has approximately 3,500 active participants.  








In his factual sufficiency argument, appellant fails to
identify any specific evidence which he claims is contrary to the jury=s finding that
Elite Activity is a pyramid promotional scheme.  See Sims, 99 S.W.3d at 603 (holding appellate
court must consider evidence appellant claims is most important in undermining
the jury=s verdict).  Rather, appellant=s brief recites a
ten-page quotation from the reporter=s record and
summarily concludes the evidence shows Elite Activity is a Abelief system@ in which A[b]elievers were
requested to invite other believers to participate in the belief system.@ 

We have reviewed the entire record in this case.  Pastor
Riley=s testimony, which
is corroborated by the Elite Activity website exhibit and the testimony of
appellant himself, shows that Elite Activity is a highly organized plan or
operation in which people pay money for the opportunity to receive money. 
Riley testified new participants pay $100 and recruit additional participants
in order to achieve Asenior@ status and
receive $800.  Riley testified he was not aware of anyone who Agifted@ in Elite Activity
without expecting payment in return.  Appellant=s own testimony
shows that participation in Elite Activity is based on the payment and receipt
of money.  Appellant testified participants Astart at the giving
designation,@ give a $100 Agift,@ and progress to
the Areceiving
designation@ where Athey have the
potential to receive eight gifts.@  It is of no
consequence that the transfer of money is characterized as a Agift@ by the person
giving or receiving the payment.  See King, 174 S.W.3d at 808B09 (holding woman=s club with Agifting plan@ satisfied the
statutory definition of pyramid promotional scheme where the Aplan involved a
gift of $2,500 for a return of $10,000 and $5,000 for a return of $20,000,
provided a sufficient number of women joined the club@).  The statute
requires only that the plan or operation is one in which Aa person gives
consideration for the opportunity to receive compensation that is derived
primarily from a person=s introduction of other persons to
participate in the plan or operation rather than the sale of a product by a
person introduced into the plan or operation.@ Tex. Bus. &
Com. Code Ann. ' 17.461(a)(6).








         
         Riley testified participation in Elite Activity did not involve the
sale of a product or service.  Riley further testified participants in Elite
Activity must recruit two additional people in order to Amove through the
activity@ and become
eligible to receive payment.  Riley=s testimony is
corroborated by the Elite Activity website exhibit which, appellant testified,
provides an accurate description of how Elite Activity works.  The website provides
that participation begins with a A$100 gift and your
two invitees ready to accept your invitation.@  The website
further provides that a participant Awill need to have
at least two invitees accept [his] invitation@ before moving to
a forward panel.  Appellant testified Elite Activity currently has 3,500 active
participants.

We find the evidence legally and factually sufficient to
support the jury=s finding that Elite Activity is a plan or
operation by which a person gives consideration for the opportunity to receive
compensation that is derived primarily from a person=s introduction of
other persons to participate in the plan or operation rather than the sale of a
product by a person introduced into the plan or operation.  See id. 

2. Appellant Promoted Elite Activity

Next, we consider whether the evidence is legally and
factually sufficient to support the jury=s finding that
appellant promoted Elite Activity, a pyramid promotional scheme.  APromoting a pyramid
promotional scheme@ means inducing or attempting to induce
one or more other persons to participate in a pyramid promotional scheme; or
assisting another person in inducing or attempting to induce one or more other
persons to participate in a pyramid promotional scheme, including by providing
references. Tex. Bus. & Com. Code Ann. ' 17.461(a)(5).  AParticipate@ means to
contribute money into a pyramid promotional scheme without promoting,
organizing, or operating the scheme. Id. ' 17.461(a)(3). 
Thus, we must determine whether the evidence is legally and factually
sufficient to establish that appellant induced or attempted to induce one or
more other persons to contribute money into Elite Activity on or about June 24,
2005. See id. ' 17.461(a)(3), (5).

In his testimony at trial, appellant admitted he arranged
and conducted a press conference on the front steps of the Harris County
criminal courthouse on June 24, 2005.  We have reviewed State=s Exhibit 1-A, a
videotape of appellant=s press conference, which shows the
following statements were made by appellant:








We invite people who can give in a
possibility that being a blessing to someone else can, in turn, bless their own
life. . . . Our activity is spelled out on our website. . . . We have a cycle. 
We begin the cycle by giving a gift.  We complete the cycle by receiving the
gift. . . . I invite you to participate in a belief system where giving opens
the way to receiving. . . . Start at the giving designation.  Progress through
the sharing and inviting designations and you complete by receiving.

In his factual sufficiency argument, appellant fails to identify
any specific evidence which he claims is contrary to the jury=s finding that he
promoted Elite Activity.  In his statements to the media, appellant repeatedly
invited other persons to participate in Elite Activity by Agiving a gift.@  Appellant also
referred his audience to the Elite Activity website, where the Aactivity is
spelled out.@  Our review of the record as a whole, and
particularly the evidence from Elite Activity=s website, shows
that appellant=s statements about the giving of Agifts@ are references to
the payment of money.  Therefore, by inviting people to participate in Elite
Activity by giving Aa gift,@ appellant was
inducing or attempting to induce one or more other persons to contribute money
into Elite Activity, a pyramid promotional scheme.

Viewing the evidence in the light most favorable to the
verdict, we find that any rational trier of fact could have found the essential
elements of promotion of a pyramid promotional scheme beyond a reasonable
doubt. See King, 174 S.W.3d at 808B09. (holding
evidence supporting conviction for promotion of pyramid promotional scheme was
legally sufficient where the defendant distributed information regarding the
scheme and encouraged other persons to join).  Viewing the evidence in a
neutral light, we find the evidence supporting the jury=s verdict is not
so weak that the verdict is clearly wrong or manifestly unjust, nor is the
contrary evidence so strong that the beyond-a-reasonable doubt standard could
not have been met.  Because we find the evidence is legally and factually
sufficient to sustain the jury=s verdict that appellant promoted a
pyramid promotional scheme, appellant=s second, seventh,
and eighth issues are overruled.     

 

 








III.      Appellant
was Not Entitled to a Jury Instruction on the Mistake of Fact Defense

In his third issue, appellant claims the trial court erred
in refusing to instruct the jury on appellant=s mistake of fact
defense.  Section 8.02 of the Penal Code provides that A[i]t is a defense
to prosecution that the actor through mistake formed a reasonable belief about
a matter of fact if his mistaken belief negated the kind of culpability
required for the commission of the offense.@  Tex. Penal Code Ann. ' 8.02(a) (Vernon
2003).  An accused has the right to a jury instruction on any defensive issue
raised by the evidence, whether that evidence is weak or strong, unimpeached or
contradicted, and regardless of what the trial court may or may not think about
the credibility of the evidence.  Murchison v. State, 93 S.W.3d 239, 252
(Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  However, if
the evidence viewed in a light favorable to appellant does not establish a
mistake of fact defense, then the trial court did not err in refusing an
instruction.  Id. Therefore, the issue is whether the evidence cited by
appellant, if believed, raises a mistake of fact defense by negating appellant=s culpable mental
state.  Id; Legere v. State, 82 S.W.3d 105, 109 (Tex. App.CSan Antonio 2002,
pet. ref=d). 

Appellant=s arguments regarding this issue focus on
statements made by appellant during the press conference on June 24, 2005. 
According to appellant, the issue is Awhether appellant=s statements at a
press conference to the media assembled in front of the court house to defend
the integrity of his belief in Luke 6:38, if believed, raise a mistake of fact
defense.@  Appellant does
not direct us to any specific evidence introduced at trial which he contends
raises an issue as to a mistake of fact.  During the press conference,
appellant attempted to explain to the media why Elite Activity was not an
illegal pyramid scheme.  In his appellate brief, appellant contends that A[a]ccepting
appellant=s statement to the press conference [sic] as true, he
could not have >intentionally or knowingly= promoted a
pyramid promotional scheme, or >intended= to violate any
portion of the consumer protection act.@ 








Under the pyramid promotional scheme statute, a person
commits an offense if that person intentionally or knowingly contrives,
prepares, establishes, operates, advertises, sells, or promotes a pyramid
promotional scheme. Tex. Bus. & Com.
Code Ann. ' 17.461(c); King, 174 S.W.3d at
808.  The statute does not require appellant to have acted with the belief that
his conduct was illegal, or with intent to violate the statute.  Tex. Bus. & Com. Code Ann. ' 17.461(c); see
also Austin v. State, 769 S.W.2d 369, 372 (Tex. App.CBeaumont 1989, pet.
ref=d) (finding
defendant who promoted endless chain scheme was not entitled to mistake of fact
defense based upon his mistaken belief that his activity was lawful).  Based on
our review of appellant=s statements at the press conference, we
find that the only Amistake@ appellant made
was believing his actions were lawful.  Such a belief is not a mistake of fact.
Vitiello v. State, 848 S.W.2d 885, 887 (Tex. App.CHouston [14th
Dist.] 1993, pet. ref=d).  Accordingly, appellant was not
entitled to a jury instruction on mistake of fact, and his third issue is
overruled. 

IV.      Appellant
was Not Denied His Right to Fair and Impartial Trial

In his ninth issue, appellant claims he was denied his
right to a fair and impartial trial because the trial judge showed favoritism
towards the State=s case.  Appellant directs us to an
excerpt from the reporter=s record of the punishment hearing, which
he contends Ashows favoritism towards the State=s case [and] that
the judge appeared to be partial which lead to suspicions as to the fairness
and integrity of the court.@  The State argues appellant failed to
show the trial judge acted improperly or that her comments prejudiced him.  We
agree with the State.  








The parties have a right to a fair trial.  Markowitz v.
Markowitz, 118 S.W.3d 82, 86 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  One of the most fundamental components of a fair
trial is a neutral and detached judge.  Id.  A judge should not act as
an advocate or adversary for any party.  Id.  To reverse a judgment on
the ground of improper conduct or comments of the judge, we must find (1) that
judicial impropriety was in fact committed, and (2) probable prejudice to the
complaining party.  Id.  The scope of our review is the entire record.  Id.
at 87.  Judicial remarks during the course of a trial that are critical
or disapproving of, or even hostile to counsel, the parties, or their cases,
ordinarily do not support a bias or partiality challenge.  Id.  Such
remarks may constitute bias if they reveal an opinion deriving from an
extrajudicial source; however, when no extrajudicial source is alleged, such
remarks will constitute bias only if they reveal such a high degree of
favoritism or antagonism as to make fair judgment impossible.  Id.

Appellant claims the trial judge showed favoritism by
stating, AI told you that I have made my ruling and that if I am
incorrect, you got me [on appeal].@  The trial court=s comment, which
was made in the context of a discussion regarding appellant=s request for a
jury charge on the defense of mistake of fact, does not show impropriety or
prejudice.  The trial judge was merely informing appellant that if her ruling
was incorrect appellant would prevail on appeal.  

Appellant next argues the trial judge demonstrated bias by
refusing to answer the following question:

[Appellant=s counsel]:        Do you
acknowledge the existence of a Supreme Being?

[The Court]:                     I
am not here to answer your questions, sir.  Do you have any objections or
anything else that you would like to put on the record before we get started
with the punishment phase?

The
trial judge=s refusal to answer appellant=s trial counsel=s question
regarding her personal beliefs does not demonstrate impropriety or prejudice. 
To the contrary, the trial judge=s refusal to
respond avoided the introduction of extrajudicial information into the
proceeding.








Finally, appellant claims the trial judge showed favoritism
by denying his motion for mistrial.   Appellant moved for mistrial on the
ground that the State failed to produce a copy of a D.V.D. made by Pastor
Riley.[3] 
The trial court ruled that appellant was not entitled to a copy of the D.V.D.
because it was not part of the State=s file in
appellant=s case.  Appellant does not raise this evidentiary
issue on appeal, and has failed to demonstrate that the trial judge acted with
bias or impropriety in denying his motion for mistrial.

We have reviewed the entire record in this case and find no
indication of judicial impropriety or bias in favor of either party.  Appellant=s ninth issue is
overruled.

                                                          Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 31, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex. R. App. P. 47.2(b).









[1]  The Apanel values@ described on Elite Activity=s website are AHead
Start ($100), Elementary ($250), High School ($500), Junior Varsity ($1,000),
College ($2,000), Masters ($4,000), and Graduate ($6,000).@





[2]  The Elite Activity website contains the following
information: ASince the taxes on the gift have already been paid and
because the gift is not given in exchange for a product or service and is NOT
and [sic] investment, these gifts are not required to be reported as gross
income of the recipient (See 26 USC ' 102).@ 





[3]  The State obtained a copy of a D.V.D. made by Pastor
Riley in connection with the prosecution of Pastor Riley for promotion of a
pyramid promotional scheme.  However, according to the prosecutor, Pastor Riley=s D.V.D. was not made part of the State=s file in appellant=s
case because appellant denied having any involvement with the D.V.D.